BEVERLEE MOZER, Plaintiff-Appellant, v. JACK KERTH, Defendant-Appellee (Northwestern Memorial Hospital, Defendant-Appellant).

First District (6th Division)   Nos. 1—90—1412, 1—90—3411 cons.

Opinion filed January 17, 1992.

Arnstein & Lehr, John J. Henely, Ltd., and Michael W. Rathsack, all of Chicago (Arthur L. Klein, Eugene J. Kelley, Jr., and David B. Goodman, of counsel), for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Ruth E. VanDemark, Francine J. Aren, and Aaron T. Shepley, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

This appeal involves a medical malpractice and products liability action brought by plaintiff Beverlee Mozer against defendants Northwestern Memorial Hospital (Northwestern), Dr. Jack Kerth (Kerth) and Bristol Meyers Laboratories (Bristol) wherein plaintiff alleges she suffered a grand mal seizure and myocardial infarct resulting from an overdose of the drug Stadol, which was administered at Northwestern at Kerth's direction. Plaintiff brought suit on January 10, 1984, and on December 4, 1984, Bristol was dismissed from the lawsuit pursuant to a settlement agreement with plaintiff. On February 9, 1989, plaintiff voluntarily dismissed Northwestern pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009).

On February 2, 1990, plaintiff filed an amended complaint which purported to reinstate Northwestern as a defendant. Northwestern moved to dismiss the amended complaint, alleging that it could not be rejoined in this manner, but rather plaintiff must refile the complaint as a separate action. The trial court denied Northwestern's motion,

but certified the issue for appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). This court allowed the appeal.

In January of 1990, Dr. Kerth filed a motion for summary judgment, which was heard on February 8, 1990. The trial court granted Kerth's motion for summary judgment, while at the same time denying plaintiff's motions for a continuance and to name an additional expert witness. Plaintiff's motion to vacate was subsequently denied as well, and plaintiff appeals the entry of judgment against her. We have jurisdiction on plaintiff's appeal pursuant to Illinois Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). Both appeals have been consolidated, and we affirm in both cases.

The facts relevant to case number 1—90—3411, plaintiff's appeal, are as follows. On January 8, 1986, following a pretrial conference, the trial court ordered plaintiff to identify her experts by July 15, 1986. Again, on December 29, 1986, the court ordered plaintiff to identify her experts by May 15, 1987. At the final pretrial conference on December 22, 1987, the court ordered plaintiff to disclose and produce all experts by December 31, 1988.

On February 11, 1986, Dr. Kerth propounded Rule 220 interrogatories to the plaintiff, seeking the identity of plaintiff's experts. These interrogatories were answered in February of 1989, naming James O'Donnell, a pharmacist, as plaintiff's expert witness. The responses to the interrogatories included the allegations that: (1) Dr. Kerth failed to follow a caution in the administration of the drug Stadol "for use in hypertension"; and (2) the dosage of Stadol should have been decreased when used with a tranquilizer. The interrogatories further indicated that the package insert of the drug Stadol would be relied upon at trial. At his deposition in December of 1989, O'Donnell testified that he was unqualified to render testimony relating to whether Dr. Kerth had deviated from the standard of care in treating plaintiff. O'Donnell did testify, however, that the drugs used by Dr. Kerth were not used correctly.

On December 9, 1989, defendant's attorney informed plaintiff's counsel that as a result of O'Donnell's qualifications as a pharmacist, as opposed to being a physician, O'Donnell could not testify as an expert on liability. Then, on January 18, 1990, Dr. Kerth brought a motion for summary judgment which was based on plaintiff's inability to make out a *prima facie* case of medical negligence against Kerth due to the insufficiency of O'Donnell as an expert witness. The motion was heard on February 8, 1990, which was the day before the case was scheduled to appear on the trial assignment call.

Before the motion was heard, on February 2, 1990, plaintiff filed a first amended complaint, which renamed defendant Northwestern as a defendant, but simply repeated the same allegations of medical negligence against Kerth and did not allege that Kerth was negligent in failing to follow the drug manufacturer's warning. At the hearing on the motion for summary judgment, plaintiff presented a motion to continue the trial based on the fact that Northwestern had not yet appeared.

The hearing on the motion for summary judgment took place on February 8 and 9, 1990. At the hearing, plaintiff also sought leave to identify a new expert witness. The trial court denied both plaintiff's request for a continuance and leave to identify a new expert, and, after argument, the trial court further granted defendant Kerth's motion for summary judgment.

Plaintiff subsequently filed a motion to vacate the trial court's ruling, and tendered an amended complaint which alleged that no expert was needed due to Dr. Kerth's violation of the drug manufacturer's instruction. In support of this motion to vacate, plaintiff attached a product information profile on the drug Stadol, which profile was gathered by a physician. Kerth, in response, filed the actual product insert from the manufacturer and the operation report which indicated the manner in which the drug had been prescribed. The trial court denied plaintiff's motion to reconsider.

The facts relevant to the consolidated action, No. 1—90—1412, are as follows. Defendant Northwestern was named in plaintiff's original complaint. On February 9, 1989, plaintiff voluntarily dismissed Northwestern from the case. The action continued against Dr. Kerth. Within one year, on February 2, 1990, plaintiff was given leave of court to amend her complaint; the effect of this amendment was to rename Northwestern as a defendant.

Northwestern filed a motion to dismiss the amended complaint, claiming that plaintiff had failed to comply with section 13—217 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 13—217.) On July 10, 1990, the trial court denied Northwestern's motion to dismiss, but agreed to certify the issue for appeal pursuant to Rule 308.

APPEAL NO. 1—90—1412

■ The first issue we address is whether the trial court erred when it granted defendant's motion for summary judgment. Due to the nature of the action below, a review of the complaint on file when summary judgment was granted is necessary. That complaint, both at the time the motion for summary judgment was filed and upon hear-

ing on the motion, alleged improper and negligent treatment of plaintiff as the proximate cause of her injury; the complaint did not mention anything about the failure to follow manufacturer's instructions, and in fact did not mention manufacturer's instructions at all. In his motion for summary judgment, Dr. Kerth asserted only that plaintiff could not establish a *prima facie* case of medical negligence against Kerth due to the fact that O'Donnell, a pharmacist, was unable to testify regarding the appropriate standard of care of Dr. Kerth, a licensed physician.

Plaintiff contends that her allegations of negligence as against Dr. Kerth "stand as true because defendant has not contravened them by way of affidavit." In so contending, plaintiff relies on the testimony of O'Donnell that the drug Stadol should not have been used on plaintiff, or that the drug should have been prescribed in a lower dosage, given plaintiff's particular history. At the time of the summary judgment proceeding, however, plaintiff's theory that defendant had failed to follow instructions had not been pleaded, no motion to amend the complaint appears of record, and the manufacturer's instructions were not presented to the court.

Plaintiff also contends that O'Donnell was qualified to testify as an expert in this case, a proposition for which plaintiff cites no case law or other authority. The standards within which we address this issue are laid out in the case of *Novey v. Kishwaukee Community Health Services Center* (1988), 176 Ill. App. 3d 674, 677, 531 N.E.2d 427. There the court observed:

> "To establish negligent medical malpractice, the plaintiff must prove the proper standard of care to measure the defendant practitioner's conduct, a negligent breach of that standard, and a resulting injury proximately caused by the practitioner's lack of skill or care. [Citations.] Except where the negligence is so grossly apparent or within the everyday knowledge of a lay person, expert testimony is required to establish the standard of care applicable to the defendant practitioner and breach of that standard. [Citations.] Our supreme court adopted the 'school of medicine' doctrine with respect to medical experts and the standard of care in *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 396 N.E.2d 13. [Citation.] Under the 'school of medicine' doctrine, the expert who establishes the practitioner's deviation from the pertinent standard of care must be both a licensed member of the school of medicine about which he opines and familiar with the ordinary methods, procedures and treatments of practitioners in the actual or a similar community unless cer-

tain uniform standards apply regardless of either locality or available conditions and facilities. [Citation.] Once the requirement of a license to practice in the school of medicine to which the witness seeks to testify is satisfied, it lies within the sound discretion of the trial court to determine if the witness is qualified and competent to state his opinion as an expert regarding the standard of care. [Citation.] The rationale behind the licensing requirement of *Dolan* is that the legislature has recognized different schools of medicine but does not favor one school over another, and since different schools have different methods of treatment and practice, it would be inequitable to have the conduct of a duly licensed practitioner of one school judged by the standards of a different school of medicine. [Citation.]"

In this case, while defendant Kerth is a licensed physician, plaintiff's expert O'Donnell is a pharmacist. The Illinois legislature has chosen to separately regulate and license these professions. (See Ill. Rev. Stat. 1985, ch. 111, pars. 4001 through 4053, 4401 through 4478.) Thus, under *Dolan*'s school of medicine doctrine, O'Donnell was unqualified to testify as to the standard of care in the instant case, and the granting of summary judgment on this basis was not improper.

■ Plaintiff alternatively argues that granting summary judgment on this basis was improper because she did not, at the time of the hearing, need to establish the standard of care and the alleged breach thereof by the use of expert testimony. Plaintiff argues that it was established in this case that Dr. Kerth failed to follow the warnings and instructions of the drug manufacturer. Plaintiff seeks to bring the case within our supreme court's holding in *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392. There, the court held that a plaintiff could establish a *prima facie* case of medical negligence on a manufacturer's recommendations and warnings. In *Ohligschlager*, "the manufacturer's instructions contained specific instructions for the use of [the drug] and warned of the hazards that could result from its improper administration." (55 Ill. 2d at 418.) In interpreting *Ohligschlager*, one appellate court has indicated that the case applies to instances where the "manufacturer's recommendations setting forth explicit instructions on the proper dosage and method of administration accompanied by warnings of an undesirable result should a physician deviate from the precise instructions." (*Young v. Cerniak* (1984), 126 Ill. App. 3d 952, 971, 467 N.E.2d 1045.) Here, in response to the motion for summary judgment, plaintiff did not supply the court with the drug manufacturer's

instructions. Plaintiff asserts that O'Donnell opined that "[t]he Stadol package insert warning of its use where the patient has hypertension was not followed." However, a review of the deposition reveals that O'Donnell was unsure as to whether plaintiff was diagnosed as hypertensive before administration of the drug (which according to O'Donnell would indicate the need for caution), or after the drug was administered (which according to O'Donnell would indicate that the elevated blood pressure reading was caused by the drug). The actual product insert, provided by defendant in response to plaintiff's motion to vacate, only provides under the heading "Contraindication" that "Stadol should not be administered to patients *who have been shown to be hypersensitive to it.*" (Emphasis added.) There was no testimony that plaintiff had been shown to be hypersensitive to the drug Stadol, and at oral argument, plaintiff's counsel was unable to point to any place in the record where competent evidence showed that plaintiff was known to Dr. Kerth to be hypertensive. The insert states only that an increase in blood pressure is an adverse reaction to the drug. O'Donnell opined that the dosage of Stadol should have been reduced when concomitantly used with a tranquilizer, which observation is borne out by the actual product insert. Yet, the only competent evidence on this issue in the record, the operation report, states that "slightly less than 1 mg. of Stadol was given," while the insert's recommended dosage was a full one milligram of the drug. O'Donnell, of course, not being qualified to give an opinion on the applicable standard of care, could not raise a question of fact as to how much less Stadol should have been administered, and the product insert did not specify what amount less should have been administered. Thus, even assuming *Ohligschlager* applied to this case, at the time of the hearing on the motion for summary judgment, plaintiff did not show by competent evidence that Dr. Kerth failed to follow explicit instructions of the manufacturer, or that the treatment of plaintiff by Dr. Kerth was in violation of the instructions. The granting of summary judgment was therefore proper.

The next issues we address are whether the trial court erred when it denied plaintiff's motion for leave to file an amended complaint and whether the trial court erred in denying plaintiff's motion to vacate summary judgment in this case. The issues are interrelated.

Plaintiff's amended complaint included allegations of failure to follow the manufacturer's instructions. In making the argument that it was error for the trial court to deny plaintiff leave to file an amended complaint, plaintiff presupposes that the aforementioned evidence was sufficient to bring the case within the parameters of *Ohligschlager.*

As indicated, the evidence was not. Plaintiff contends, however, that her motion to amend was erroneously denied because section 2–1005(g) of the Code of Civil Procedure provided plaintiff an "absolute right to file such amendment even after the entry of summary judgment."

In two recent cases, which were both decided after the trial court's ruling on plaintiff's motion to amend, the First District Appellate Court addressed the propriety of amending a complaint after the entry of summary judgment. In *Loyola Academy v. S & S Roof Maintenance, Inc.* (1990), 198 Ill. App. 3d 799, 556 N.E.2d 586, the court held that a trial court has the power to allow a plaintiff to amend a complaint pursuant to section 2–1005(g), and a plaintiff is not limited in its ability to do so by conforming the pleadings to the proofs. (198 Ill. App. 3d at 802.) The court, however, stressed that motions to amend the pleadings after summary judgment typically are made much later in the proceedings and are viewed with less liberality than those made at the "pleading stage." (198 Ill. App. 3d at 803.) The court concluded:

> "In the instant case Loyola [plaintiff] proposes amendments of potentially significant impact to the case. The facts Loyola alleges in the amended complaint were known at the inception of this litigation. The trial court noted that Loyola could have filed its amended complaint before the court granted summary judgment ***. Loyola offered no justification for its lack of alacrity, and the trial court was within its discretion when it denied Loyola's motion to amend the pleadings." 198 Ill. App. 3d at 803–04.

In *Hill v. Jones* (1990), 198 Ill. App. 3d 854, 556 N.E.2d 613, the court observed that "[p]resumptively, at the time of the hearing on the motion for summary judgment, the parties are aware of the significant facts and law which apply to the case. The hearing on the motion is an important, potentially dispositive stage of the proceeding." (198 Ill. App. 3d at 858.) The court concluded: "As the plaintiff has offered no justification for failing to propose her alternative theories at a more appropriate stage of the proceedings, we do not believe the trial court abused its discretion in denying the plaintiff leave to amend." 198 Ill. App. 3d at 858–59.

■ Application of *Loyola* and *Hill* to the facts of the instant case leads to the conclusion that the trial court did not abuse its discretion in denying plaintiff leave to amend her complaint after the entry of summary judgment. The case was filed in 1984. The hearing on the motion for summary judgment was not held until February 8 and 9,

1990. This was, respectively, the day before and the day when the case was set to be assigned for trial. Thus, the case was at the trial stage, rather than at the pleading stage. While O'Donnell was not produced for deposition until December of 1989, he had been revealed as a witness in February of 1989, and at this time his qualifications were known to plaintiff. Plaintiff does not dispute that she was informed by defense counsel in December of 1989, shortly after the deposition, that O'Donnell would not suffice as a testifying expert. At his deposition, he repeatedly acknowledged that he was not giving opinions as to deviation from the standard of care, although he attempted to opine regarding a school of medicine other than his. Plaintiff's proposed amendment sought to include allegations to take the case out of the usual medical malpractice case, and institute an action whereby expert testimony would be unnecessary. The proposed amendment did not simply "clarify" the allegations of the complaint, as plaintiff contends in her brief, but rather sought to change the nature of the action. Given that plaintiff has offered no justification for her lack of alacrity, we hold that the trial court did not abuse its discretion in denying plaintiff leave to amend her complaint pursuant to section 2—1005(g).

■ As to the motion to vacate the entry of summary judgment, which included an affidavit of a physician, Dr. Zsigmond, criticizing Dr. Kerth's treatment, the record reveals that plaintiff's counsel had obtained Zsigmond's opinion at least the night before the first day of the hearing on the motion for summary judgment. Our supreme court has held that "[t]he submission of a new matter on [a motion for reconsideration] after a motion for summary judgment has been granted lies in the discretion of the trial court [citation], but it should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing [citations]. In the absence of any such valid explanation, there was no reason to change the ruling." (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 195, 545 N.E.2d 649.) There is no valid explanation for the lack of the Zsigmond affidavit at the time summary judgment was granted on the 9th of February, 1990, and thus the trial court did not abuse its discretion in denying the motion to vacate.

Finally, the trial court's decision is supported by an examination of the effect that granting plaintiff's motions would have had on Supreme Court Rule 220 (134 Ill. 2d R. 220). Rule 220(b)(1) provides in relevant part:

> "[T]he identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party

either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed. *** All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the trial will commence. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." 107 Ill. 2d R. 220(b).

The court in *Mitchell v. Wayne Corp.* (1989), 180 Ill. App. 3d 796, 800-01, 523 N.E.2d 241, observed:

"The purpose of Rule 220 is to facilitate trial preparation by eliminating last-minute disclosure of expert witnesses. [Citation.] The reason for Rule 220 is that adequate trial preparation requires timely disclosure of expert witnesses. Time is needed prior to trial to investigate and discuss the substance of the testimony of an opponent's expert with one's own experts in order to prepare for cross-examination. [Citation.] Rule 220 was therefore adopted in an attempt to establish a uniform, but not inflexible, framework for the timely revelation of the identity of expert witnesses and the subject matter of their testimony. [Citation.] The rule authorizes the establishment of deadlines and requires that the parties act in good faith to ascertain the identity of expert witnesses they reasonably anticipate using. [Citation.]"

In the instant case, plaintiff was initially ordered to disclose her expert witness in January of 1986. Three separate orders were entered at the pretrial stage ordering plaintiff to disclose the identity of her expert, and Dr. Kerth propounded Rule 220 interrogatories on February 11, 1986, seeking to learn the identity of the expert. It was not until February of 1989 that the identity of O'Donnell was disclosed, and O'Donnell was deposed in December of 1989. Before the deposition of O'Donnell, as the trial court noted, plaintiff had agreed to the setting of the action on the trial assignment call in February of 1990. Before that time, plaintiff had not sought leave of court to secure additional time in order to name a different expert. It was only

after the motion for summary judgment was filed and O'Donnell was deposed that plaintiff sought the court's permission to retain a new expert.

The trial court was clear in holding that if a new expert was to be disclosed at this late stage of the proceeding, or a continuance granted so that plaintiff could secure a new expert, Rule 220 would in effect be circumvented. Plaintiff cites the case of *Cometo v. Foster McGaw Hospital* (1988), 167 Ill. App. 3d 1023, 522 N.E.2d 117, in support of her argument that the trial court erred in granting and refusing to vacate summary judgment. *Cometo*, however, is clearly distinguishable. There, the plaintiff had in fact complied with a discovery order in identifying his expert—only the expert initially refused to testify. Then, the expert decided that he would testify. In response to a motion for summary judgment, the plaintiff offered the expert's affidavit, and the *Cometo* court held that this change in circumstance, as well as a continuation of the trial date, constituted a "sufficient change in circumstances from those that existed when the Rule 220 sanctions were imposed to require the trial court, in the interests of justice, to reopen discovery and reject the harsh penalty of summary judgment." (167 Ill. App. 3d at 1029.) Here, there was no change of heart on the part of a competent, disclosed expert, but rather plaintiff sought additional time to secure a new expert at the latest stages of the proceedings. It is clear that, as the trial court reasoned, Rule 220 would have been eviscerated had plaintiff been granted the relief plaintiff sought. We therefore conclude that the trial court did not abuse its discretion in granting the motion for summary judgment or in denying plaintiff's motion to vacate.

APPEAL NO. 1—90—3411

The question certified by the trial court reads as follows:

"Whether a plaintiff who has dismissed a defendant pursuant to Ill. Rev. Stat., ch. 110, par. 2—1009, by an order which did not grant plaintiff leave to reinstate that defendant may subsequently reinstate the defendant in the litigation by filing an amended complaint, or whether the plaintiff must commence a new action against that defendant and consolidate the actions."

In resolving the questions the certified question presents, we will first discuss the reasons why the issues have been made somewhat more complex than necessary. We will then detail the pertinent facts, comment on the split of authority which has developed on the issue and discuss generally the procedures by which a voluntarily dismissed defendant may be brought back into a case. Next, we will resolve the

instant case, and finally, we will make a few pertinent observations on the subject.

The issue before us has been made somewhat more complex than necessary for several reasons. First, as will be discussed in greater detail, plaintiff employed a very unusual method of "reinstating," or, perhaps more accurately, refiling the case against Northwestern. Second, the certified question is posed in a way that, when the question is answered, the outcome of the case does not flow from the answer to the question. Third, the arguments of the parties in their briefs do not necessarily conform to the certified question.

A brief recitation of the essential facts and the procedure plaintiff used below is as follows. Plaintiff voluntarily dismissed Northwestern from the action on February 9, 1989. Plaintiff did not seek leave of court at that time to subsequently reinstate Northwestern, and the order simply provided that Northwestern was dismissed from the action pursuant to section 2—1009 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009.) On February 2, 1990, plaintiff appeared, pursuant to notice given, on the trial court's routine motion call. No objection to plaintiff's motion appears of record. The notice of this motion stated that plaintiff was presenting her "Motion [for] Leave to File First Amended Complaint at Law, refiling charges against the Defendant, Northwestern Memorial Hospital."

The motion read simply that plaintiff "moves this Honorable Court for leave to file Amended Complaint at Law with Summons to issue instanter." The first amended complaint at law repeated the same allegations in the original complaint. The first paragraph of the amended complaint read as follows:

> "That this Complaint is a refiling of a previously dismissed cause of action under the Illinois Code of Civil Procedure, section 2—1009, as against the Defendant, NORTHWESTERN MEMORIAL HOSPITAL only; said defendant was voluntarily dismissed on February 9, 1989. This refiling is within one year of said dismissal."

An order was entered giving plaintiff leave to file the amended complaint which stated that plaintiff was "granted leave to file her First Amended Complaint at Law adding Defendant, NORTHWESTERN MEMORIAL HOSPITAL, with Summons to issue instanter." Service was in fact had upon Northwestern. Thus, plaintiff did not present a motion to vacate the voluntary dismissal, and we view plaintiff's action of "reinstating" Northwestern as in effect a refiling of the action without paying the filing fee, getting a new case number, and necessitating consolidation of the cases.

As indicated, Northwestern filed a motion to strike and dismiss the amended complaint, which the trial court denied, and the issue was subsequently certified pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). In denying Northwestern's motion to strike and dismiss, the court relied on the case of *Kalalinick v. Knoll* (1981), 97 Ill. App. 3d 660, 422 N.E.2d 1011. There, the court reviewed a situation where plaintiff had previously voluntarily dismissed a defendant, while another defendant remained in the action, and later filed a motion to reinstate the dismissed defendant. The trial court granted plaintiff's motion, and plaintiff subsequently amended his complaint. The dismissed defendant in *Kalalinick* sought to dismiss the amended count against it, arguing that the trial court had been without jurisdiction to set aside the voluntary dismissal, because the order granting voluntary dismissal did not include leave to reinstate. The *Kalalinick* court cited a number of cases which held that a trial court has no power to allow the reinstatement of suit against a dismissed defendant in the absence of leave given to reinstate at the time the voluntary dismissal was granted. The cases the *Kalalinick* court cited included fact patterns both where the dismissed defendant was the only defendant in the case and where other defendants remained in the action. The court, however, also cited a case which held that where the dismissed defendant was the only defendant in the case, the rule did not apply. (See *Thompson v. Otis* (1936), 285 Ill. App. 523, 2 N.E.2d 370.) The split of authority *Kalalinick* discussed included cases from before both the adoption of the Civil Practice Act, and after, and from both before and after the adoption of Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

The *Kalalinick* court held that where defendants other than the voluntarily dismissed defendant remained in the action the rule that requires securing prior leave of court to reinstate did not apply. Central to the reasoning of *Kalalinick* was that Supreme Court Rule 304(a) changed the rule in the multiple-defendant situation. Rule 304(a), according to the court, governs the situation because that rule, which applies to orders and judgments alike, allowed for the reinstatement of a complaint *"involuntarily* dismissed against one party as long as there are claims pending against other parties in the same action. [Citations.]" (Emphasis added.) Nothing in the supreme court rule limits its application to only involuntary, and not voluntary, dismissals, and in the absence of a Rule 304(a) finding in the order granting the voluntary dismissal, a trial court would retain jurisdiction over the matter. See *Kalalinick*, 97 Ill. App. 3d at 662-64.

Contrary to *Kalalinick*, in *Herman v. Swisher* (1983), 115 Ill. App. 3d 179, 450 N.E.2d 28, the court affirmed the trial court's denial of plaintiff's motion to reinstate the action against a voluntarily dismissed defendant. There was in *Herman*, as in *Kalalinick* and the instant case, another defendant in the action. The *Herman* court, however, cited only one case on the general rule, and did not cite *Kalalinick* at all or discuss Rule 304(a).

A few observations about the methods in which a voluntarily dismissed defendant may be brought back into a case are in order. First, the legislature has provided plaintiffs with the right to refile against a voluntarily dismissed defendant. Section 13—217 of the Code of Civil Procedure provides that plaintiffs have one year in which to do so, and whether any other defendants remain in the action is irrelevant.

The case law makes it clear that plaintiffs also have the option of securing leave to reinstate a dismissed defendant at the time the voluntary dismissal is granted. We think it self-evident that in order for "reinstatement" to be the method of bringing a defendant back into the action, leave to reinstate must have been granted at the time of dismissal. Again, if leave to reinstate is given at that time, it is irrelevant whether there are multiple defendants.

The effect of Rule 304(a), however, provides plaintiffs with the option of vacating a voluntary dismissal. Rule 304(a) provides in pertinent part as follows:

> "(a) Judgments As To Fewer Than All Parties or Claims—Necessity for Special Finding. If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (134 Ill. 2d R. 304(a).)

Implicit in the reasoning of *Kalalinick* is the result that the order granting the voluntary dismissal as to one defendant (where there are multiple defendants and there is no Rule 304(a) language) is subject to revision and thus may be vacated by the trial court upon the proper motion.

Finally, we observe that the simple amending of a complaint is not a proper method of bringing a voluntarily dismissed defendant back

into a case. No statutory or judge-made authority has been brought to our attention which authorizes the simple amendment of a complaint in the situation discussed herein. We note that in *Thompson v. Otis* (1936), 285 Ill. App. 523, 2 N.E.2d 370, the court held that bringing the previously dismissed defendant back into case by the service of summons *and* by the filing of an amended complaint was as efficacious as filing a new, independent action against the defendant.

■ Having provided a background, we move on to answering the certified question. It is clear that the question is worded so as to present two separate issues. The first is whether the plaintiff who has voluntarily dismissed a defendant "by an order which did not grant plaintiff leave to reinstate that defendant may subsequently reinstate the defendant in the litigation by filing an amended complaint." The answer to this part of the question is clearly that, in the situation where the dismissed defendant is the only defendant, plaintiff may not do so. His only recourse, under the cases, is to file a new action against the defendant subject to the terms of section 13—217 of the Code of Civil Procedure. The answer to this part of the question is still no where there is more than one defendant. This is so because the only time a plaintiff should be allowed to reinstate a defendant is where leave to reinstate is granted. In the absence of leave to reinstate, reinstatement is improper, and the plaintiff must bring the dismissed defendant back into the case by the use of a different procedure than simply amending the complaint.

The answer to the second part of the question, whether a plaintiff must commence a new action and consolidate the actions, is no as well. Clearly, the Code of Civil Procedure gives plaintiffs the option of refiling an action against a voluntarily dismissed defendant. Where there are multiple defendants, the cases may then be consolidated. As we have discussed, however, where there are multiple defendants, the reasoning of *Kalalinick* leads to an alternative method.

In fact, what the plaintiff did here was "refile" in an amended complaint, albeit in such a way as to avoid the customary filing fee and the need to consolidate. This is evidenced by the fact that summons was served upon Northwestern. The amended complaint even included the language "this complaint is a refiling of a previously dismissed cause of action." This procedure occurred within the one-year period section 13—217 allows. Moreover, under *Thompson v. Otis*, such a procedure is in effect sanctioned. Without sanctioning this procedure ourselves, and with the caveat that in future cases we may not sanction such a hybrid procedure and confusion of labeling, we do not agree that Northwestern should be dismissed.

In this case, Northwestern's position appears to be that the only way in which it could have been brought back into the case was via a proper refiling. We have refuted that contention. Northwestern has not urged, as a ground for dismissal of plaintiff's claim against it, that plaintiff improperly refiled its case. In fact, Northwestern's briefs assume that plaintiff moved to vacate the voluntary dismissal order, which plaintiff did not. An appellate court should not expand upon a certified question to answer questions not included therein. (See *Williams v. Chicago Osteopathic Medical Center* (1988), 173 Ill. App. 3d 125, 527 N.E.2d 404.) Because we view plaintiff's actions below as more like a refiling than any other method of bringing Northwestern into the case, because authority exists to sanction such a procedure as plaintiff employed and because Northwestern has not argued that the improper method of refiling warrants dismissal, we refuse to dismiss plaintiff's action against Northwestern.

Likewise, because we should not expand upon the certified question, we need not reach defendant's contention that it was an abuse of discretion in this case for the trial court to allow the refiling against defendant in this case. That issue assumes that the voluntary dismissal was vacated. However, as we have stated, what occurred here was more akin to a refiling. Moreover, even if we were to consider that vacature occurred, in the absence of any indication that defendant was prejudiced (*i.e.*, that defendant would have been forced to go to trial unprepared), we question whether the trial court would have abused its discretion, given that plaintiff refiled her action within one year of dismissal, as section 13—217 allows.

Affirmed and remanded.

EGAN, P.J., and LaPORTA, J., concur.