**Lavena K. NAIL**

v.

**Gerald S. LAROS, M.D.**

No. 07–92–0316–CV.

Court of Appeals of Texas,
Amarillo.

May 10, 1993.

H. Thomas Hirsch, Odessa, for appellant.

Jim Hund, McCleskey, Harriger, Brazill & Graf, L.L.P., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Aggrieved by a take-nothing summary judgment rendered in her medical malpractice action against Dr. Gerald S. Laros, now deceased,* Lavena K. Nail contends with four points of error that Dr. Laros failed to establish a right to the judgment. Disagreeing, we will affirm.

In 1987, Mrs. Nail suffered an on-the-job injury and a diskectomy was performed on her back. The surgery did not provide relief and, on 5 June 1988, Dr. Laros, an orthopedic surgeon in Lubbock, performed an anterior fusion on Mrs. Nail's lumbar spine. Two days later, the laboratory reported a culture from the bone graft implanted during the surgery revealed a small amount of staphylococcus bacteria, coagulase negative, which could indicate the possibility of an infection. Doctor Laros treated Mrs. Nail with an antibiotic, Ansef, intravenously for six days, from June 10 to June 16, when she was discharged with no sign of an active infection. She was not given any oral postoperative antibiotics.

The following July 11, Dr. Michael J. Hanley, an orthopedic surgeon in Palestine, discovered through blood tests that Mrs. Nail had a postoperative infection in the

---

* A suggestion of Dr. Laros' death has been filed, representing that after judgment was signed on 6 July 1992, he died on 20 September 1992. *See* Tex.R.App.P. 9(a).

operative site. To correct the staph infection, he recommended, and performed, an anterior debridement, removing the bone graft used in Dr. Laros' surgery. After a month of antibiotic medication, Dr. Hanley performed his second anterior procedure, which was necessary because of the staph infection, and used a bone from Mrs. Nail's hip for the bone graft. She was discharged with no indication of staph infection. Because Mrs. Nail had established osteomyelitis, *i.e.*, infectious inflammation of the bone marrow, Dr. Hanley prescribed the standard treatment—the antibiotic Bactrim DS to be taken orally for approximately six months to minimize the reoccurrence of the infection.

Subsequently, Mrs. Nail brought the action underlying this appeal to recover monetary damages from Dr. Laros. Disclaiming any complaint of the doctor's diagnosis of her condition or his surgical technique, she founded her action on allegations of Dr. Laros' negligence (1) in discharging her from the hospital while she was continually running fever, and by his failure (2) to prescribe an oral antibiotic after her release from the hospital, and (3) to diagnose the staph infection she had. On appeal, she characterizes her action as one for Dr. Laros' failure to diagnose her postoperative staph infection and his ineffective medication treatment for the staph infection.

Discovering that Mrs. Nail expected to call Dr. Hanley as her only expert witness at trial, Dr. Laros secured Dr. Hanley's deposition. He then moved for summary judgment on the ground that there was no departure by him from the required standard of care. He supported his motion by the pleadings, answers to interrogatories, and the deposition of Dr. Hanley, which was represented to show that he, Dr. Laros, did not violate any standard of medical care and nothing he did or failed to do proximately caused injuries or damages to Mrs. Nail.

Mrs. Nail filed two responses to the summary judgment motion. In her first response, she alleged Dr. Hanley's deposition testimony that Ansef probably would not kill the organism infecting her from the bone graft Dr. Laros implanted, raised the fact issue whether Dr. Laros prescribed an effective medication.

Later, she submitted her second response, incorporating her first response and attaching the affidavit of Rickey Floyd Neff, a licensed pharmacist. Reporting that he specialized in clinical pharmacy, Neff claimed "as much expertise as a board certified orthopaedic surgeon in determining the proper medication for a disease or an infection or the prevention of infection and the length of the medication therapy." Then, he expressed the opinion, "based upon medical reasonable probability," that because of the non-living bone used by Dr. Laros, the doctor should have prescribed a much longer period of Ansef medication therapy, and his failure to do so was negligence and a proximate cause of the staph infection found by Dr. Hanley. By this response, Mrs. Nail proposes there is a fact issue whether Dr. Laros was negligent in his treatment of her.

The trial court rendered a take-nothing summary judgment. In attacking the adverse judgment, Mrs. Nail advances four points of error. The points, grouped for argument, present the central contention that Dr. Laros failed to establish his right to judgment because there are genuine issues of material fact.

■ To merit the summary judgment rendered, Dr. Laros was required to meet and defeat Mrs. Nail's pleaded cause of action. *Torres v. Western Casualty and Surety Company*, 457 S.W.2d 50, 52 (Tex. 1970). Inasmuch as Mrs. Nail's action was founded on the diagnosis and treatment of a particular infection outside the knowledge of a layman, the motion for summary judgment was dependent upon expert evidence; and, if the expert medical evidence supported the motion, Mrs. Nail, to defeat the motion, was required to produce controverting expert medical evidence. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991).

To meet Mrs. Nail's action as pleaded before she responded to his motion for summary judgment, Dr. Laros relied upon Dr. Hanley's deposition testimony to ne-

gate her allegation that he was negligent in discharging her from the hospital while she was continually running fever. Testifying with reference to the Lubbock hospital records, Dr. Hanley said that it was normal for a patient to run a fever following surgery; that from June 12 until June 16, Mrs. Nail's temperature settled into a pattern at or just above normal, which was not out of the ordinary; and that on the date of her discharge, Mrs. Nail's temperature was 98.6, which was normal. Even with her response, Mrs. Nail does not suggest, nor do we find, controverting evidence which would raise a fact issue that Mrs. Nail was discharged while continually running fever.

With respect to her allegation that Dr. Laros was also negligent in failing to diagnose the staph infection she had, Mrs. Nail points to Dr. Hanley's testimony that the laboratory report reveals the possibility of a staph infection as early as June 10 and asserts there is no showing that Dr. Laros was aware of the laboratory report. However, the hospital records show that Dr. Laros treated Mrs. Nail intravenously with an antibiotic, Ansef, from June 10 to June 16, when she was discharged without any indication of an infection.

▬ According to Dr. Hanley, staphylococcus coagulase negative is sensitive to only a very few antibiotics, one of which is cephalosporin. Ansef is a first generation cephalosporin commonly given before and after surgery to minimize the risk of infection. Although Ansef will kill staphylococcus coagulase positive, it would not be effective against coagulase negative. Nevertheless, the doctor stated that if he was reading the Lubbock laboratory report right, the particular organism would have been sensitive to a cephalosporin. Asked what he would have prescribed if he were the orthopedic surgeon in Lubbock and had received the laboratory report, Dr. Hanley replied that he did not think he would have done anything differently. He stated he had no criticism of anything Dr. Laros did concerning Mrs. Nail's care and treatment.

Given Dr. Hanley's depositional opinion that generally orthopedic surgeons are experts in treating infections with implants,

the essence of his testimony is that Dr. Laros did not depart from the accepted standard for diagnosing Mrs. Nail's infection. She did not produce any contradictory medical evidence to raise a fact issue regarding Dr. Laros' diagnosis.

In relying upon her allegation that Dr. Laros failed to prescribe an oral antibiotic after her release from the hospital, Mrs. Nail first mentions the fact that Dr. Hanley prescribed oral antibiotics upon her release after her surgery. However, as earlier mentioned, the prescribed antibiotic was to minimize Mrs. Nail's established osteomyelitis, not to treat a staph infection. Moreover, Dr. Hanley testified that there are no oral antibiotics which are effective against staph coagulase negative and, based upon the laboratory report, he would not be inclined to put a person on oral antibiotics; indeed, he added, that was not the routine of any board certified orthopedic surgeon that he knew. Thus, Dr. Hanley's prescription for a different infection does not create a fact issue whether Dr. Laros should have prescribed an oral antibiotic for a staph infection upon Mrs. Nail's release from the hospital.

Aside from that, Mrs. Nail actually relies upon the affidavit of pharmacist Neff to create a fact issue whether Dr. Laros should have, but failed to, prescribe an oral antibiotic upon her release from the hospital. This raises the question, said by the parties to be one of first impression in Texas jurisprudence, whether the affidavit of Neff, a pharmacist, is sufficient to raise a fact issue regarding Dr. Laros' medication treatment. We hold that it is not.

If the allegation of Dr. Laros' negligent treatment pleaded by Mrs. Nail is to be summarily resolved, the court must rely upon expert testimony. *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965). Absent testimony by Dr. Laros to address the allegation, *see, e.g.*, rule 166a(c), Texas Rules of Civil Procedure; *Anderson v. Snider*, 808 S.W.2d at 55, the testimony must be from a doctor of the same school of practice as Dr. Laros, *Williams v. Bennett*, 610 S.W.2d 144, 146 (Tex.1980); *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949), unless it can be shown that the

specialized art of treating the infection from an implant is common to, and equally recognized and developed in, all fields of practice. *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933, 935–36 (1953).

■ Doctor Hanley, designated as Mrs. Nail's expert witness, was the only testifying practitioner of the same school of practice as Dr. Laros. His testimony negated Mrs. Nail's claim that Dr. Laros' failure to prescribe an oral antibiotic upon her release from the hospital was negligence. Then, unless pharmacist Neff was competent to controvert Dr. Hanley's testimony, Mrs. Nail has not raised a fact issue of Dr. Laros' alleged negligence.

It is at once obvious that despite pharmacist Neff's self-serving declaration of expertise, nothing in this record even suggests that one schooled in pharmacy, *i.e.*, the art of preparing and dispensing drugs, is recognized as being on an equal footing with a board certified orthopedic surgeon in diagnosing and treating infections associated with surgical implants. Nor is there any showing that the art of preparing and dispensing drugs is common to, or recognized as being equal to, the specialized art of treating infection resulting from a bone implant. Neff's resume reveals that he neither is a physician nor has undergone the extensive training required of an orthopedic surgeon who, Dr. Hanley opined, was an expert in treating infections with implants. We may judicially notice that a pharmacist cannot legally prescribe medication, and is even prohibited from dispensing a dangerous drug, which by definition includes Ansef, without a valid prescription from a practitioner. Tex.Health & Safety Code Ann. § 483.042 (Vernon 1992). It follows that pharmacist Neff, however well qualified in the school of pharmacy, is not competent to express an opinion on Dr. Laros' medication treatment of an infection associated with a surgical implant.

■ Our holding is not a novel one, for courts outside our jurisdiction have rejected the testimony of a pharmacist, who is not a physician, regarding the proper standard of care for a physician practicing a medical specialty. In *Bell v. Hart*, 516 So.2d 562, 566 (Ala.1987), the testimony of a pharmacist, with credentials more impres-

sive than those of Neff, which was offered to prove a doctor was negligent in prescribing an antidepressant, was excluded on the ground that he was not competent to testify as an expert on the standard of care in prescribing a drug. Likewise, *Young v. Key Pharmaceuticals, Inc.*, 112 Wash.2d 216, 770 P.2d 182, 190 (1989), held that the affidavit of a pharmacist regarding the physician's standard of care was not entitled to be considered. Similarly, *Mozer v. Kerth*, 224 Ill.App.3d 525, 166 Ill.Dec. 801, 805, 586 N.E.2d 759, 763 ([1st Dist.] 1992), held that a pharmacist was not qualified to testify to the standard of care of a licensed physician. And the holding of *Rodriguez v. Jackson*, 118 Ariz. 13, 574 P.2d 481, 487 (App.1977), was that a pharmacologist—*i.e.*, one who studies the composition, uses, and physiological effects of drugs—was not competent to give an opinion whether a doctor was negligent. Mrs. Nail does not offer, and we have not found, any authority which approves the testimony of a pharmacist, who is not a physician, to show the standard of medication treatment of a licensed physician.

It follows that the affidavit of pharmacist Neff was not admissible to raise a fact issue regarding Dr. Laros' medication treatment of Mrs. Nail or his alleged negligence in that respect. Mrs. Nail's four points of error are overruled.

The judgment is affirmed.