*In re* TRACY TIFFIN, A Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Tracy Tiffin, Respondent-Appellant).

Fourth District   No. 4—94—0490

Argued December 6, 1994.—Opinion filed January 26, 1995.

McCULLOUGH, J., specially concurring.

Melissa McGrath (argued), of Guardianship & Advocacy Commission, of

Peoria, and Jeff Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Respondent, Tracy Tiffin, appeals from the entry of an order of involuntary admission by the Sangamon County circuit court. (405 ILCS 5/3—701 (West 1992).) Respondent argues his involuntary admission was improper because (1) the State did not follow statutory procedures for the filing of a petition for involuntary admission; (2) the State's voluntary dismissal of its petition for involuntary admission and later reinstatement of it conflict with provisions of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 *et seq.* (West 1992)); (3) the trial court abused its discretion by allowing him to waive his right to counsel; and (4) the evidence was insufficient to establish (a) he had a mental illness and could be expected to be a danger to himself or others and (b) hospitalization was the least-restrictive alternative available. We find it was error to allow the State to reinstate its petition for involuntary admission and the trial court abused its discretion in allowing respondent to waive his right to counsel. Therefore, we reverse.

During the early morning hours of April 15, 1994, respondent was arrested and charged with disorderly conduct and criminal trespass to property after awakening a neighbor by ringing her doorbell repeatedly and shouting obscenities at her when she finally answered her door. Later that day, a petition for involuntary admission pursuant to section 3—701 of the Code (405 ILCS 5/3—701 (West 1992)) was filed against respondent in Sangamon County circuit court. As the petition was filed without either of the two required medical certificates, respondent was admitted to Andrew McFarland Mental Health Center (McFarland) that same day pursuant to court order for detention and examination. 405 ILCS 5/3—702(b), 3—704(a) (West 1992).

Respondent was examined at McFarland on April 15 and April 18. On April 21, respondent signed a request for voluntary admission to McFarland and the State voluntarily dismissed its petition for involuntary admission with leave to reinstate it within 21 days. Later that same day, respondent served a written notice of request for discharge pursuant to section 3—403 of the Code (405 ILCS 5/3—403

(West 1992)) on a member of the McFarland staff. Following respondent's request for discharge, the State, on April 25, filed a motion to reinstate its petition for involuntary admission. On April 27, the trial court granted the State's motion to reinstate and set a hearing on the petition for involuntary admission for April 29.

At the start of the hearing, respondent appeared with counsel and requested the right to represent himself. His counsel indicated to the trial court respondent had informed him he wished to represent himself, and the trial court then excused respondent's counsel.

The sole witness for the State was Sharon Peters, the licensed clinical social worker from McFarland who had examined respondent on April 18. Peters testified in her opinion respondent suffered from schizophrenia and, because he had shown aggressive tendencies since admission to McFarland, he could reasonably be expected to inflict serious physical harm upon others. She also stated she was unaware of any less restrictive form of treatment other than hospitalization. Respondent testified in his own behalf and indicated he wrote poetry and songs while at McFarland and gave the trial court several examples. The trial court concluded respondent was subject to involuntary commitment and ordered respondent to remain hospitalized at McFarland.

■ Section 2—1009(a) of the Civil Practice Law (Law) (735 ILCS 5/2—1009(a) (West 1992)) provides a plaintiff may obtain a dismissal without prejudice at any time before trial or hearing begins. Further, a party can voluntarily dismiss an action under section 2—1009 with leave to reinstate it if the party asks for leave to reinstate at the time voluntary dismissal is sought. (*Mozer v. Kerth* (1992), 224 Ill. App. 3d 525, 539, 586 N.E.2d 759, 768.) Proceedings under the Code are governed by the Law "except to the extent the provisions of this Act indicate to the contrary or are inconsistent, in which case this Act governs." 405 ILCS 5/6—100 (West 1992).

■ Respondent argues section 2—1009(a) of the Law is inconsistent with the provisions of the Code dealing with the filing of a petition for involuntary commitment when a voluntary patient seeks discharge. Section 3—403 of the Code provides a voluntary patient shall be discharged five days after requesting discharge unless, within the five-day period, a petition for involuntary commitment and two medical certificates conforming to the requirements of section 3—602 of the Code (405 ILCS 5/3—602 (West 1992)) are filed with the court. (405 ILCS 5/3—403 (West 1992).) The section 3—403 requirement that certificates be in accordance with section 3—602 anticipates fresh information will be used as a basis for changing a patient's status from voluntary to involuntary commitment because a certifi-

cate filed in accordance with section 3—602 shall indicate the physician or other examiner has examined a respondent no more than 72 hours prior to admission. (405 ILCS 5/3—602 (West 1992).) Section 3—602 appears in article VI of the Code, dealing with emergency or immediate admissions of respondents—cases in which petitions are filed and respondents are admitted immediately (see 405 ILCS 5/3—602 (West 1992)). Therefore, requiring the examinations supporting the certificates to be done no more than 72 hours prior to admission is the same as requiring they be done no more than 72 hours prior to filing of the petition.

■ In this case, the certificates attached to the reinstated petition indicated the examinations occurred on April 15 and 18 while the petition was reinstated on April 27, obviously more than 72 hours prior to the filing of the petition. Thus, allowing the reinstatement of the petition for involuntary commitment under section 2—1009(a) of the Law results in certificates which are stale and is contrary to the Code. We find this requires reversal of the trial court's order of involuntary commitment.

■ Although not the case here, as respondent did not know the State's petition was dismissed with leave to reinstate, allowing the State to voluntarily dismiss a petition for involuntary commitment with leave to reinstate further conflicts with the Code in its prohibition of statements to a respondent he may be subject to involuntary commitment if he does not commit himself voluntarily. (405 ILCS 5/3—402 (West 1992).) Permitting the State to retain the power to reinstate its petition for involuntary commitment operates as a form of coercion discouraging a respondent from asking for a voluntary discharge and is inconsistent with the policy of the Code.

■ Further grounds for reversal of the trial court's commitment order are found in its abuse of discretion in allowing respondent to waive his right to counsel. The Code guarantees all persons subject to involuntary commitment a right to counsel. (405 ILCS 5/3—805 (West 1992).) Counsel can be waived by a respondent only if the court is satisfied respondent has the capacity to make an informed waiver. (405 ILCS 5/3—805 (West 1992).) Whether a trial court should allow a respondent to waive his right to counsel is discretionary. *In re Click* (1990), 196 Ill. App. 3d 413, 419, 554 N.E.2d 494, 497.

The following exchange was had concerning counsel prior to hearing on the State's petition:

"Show present the respondent, with his counsel, Mr. Conroy. Show present Mr. Edmeier for the State.

Are you ready to proceed then, counsel?

MR. EDMEIER: I am, Your Honor.

MR. CONROY: Your Honor, at this time, Mr. Tiffin has informed me that he does not want me to represent him and that he is aware that he has a right to be his own—.

THE RESPONDENT: Represent myself.

MR. CONROY: Represent himself, and at this time he wishes to exercise that right. Is that true, [respondent]?

THE RESPONDENT: That's what I want to do, yes.

THE COURT: All right, you're excused then, Mr. Conroy."

■ We have previously found discharging counsel at the start of the hearing on a petition for involuntary commitment without a determination of the respondent's understanding of the ramifications of his decision to proceed *pro se* to be reversible error. (*Click*, 196 Ill. App. 3d at 423, 554 N.E.2d at 500.) In this case as well as in *Click*, no preliminary questions were asked of the respondent to assess his mental ability or intelligence or his understanding of the purpose of counsel. Unlike in *Click*, where counsel was ordered to remain in the courtroom to assist the respondent or to answer questions, no such provision was made in this case.

Respondent's cross-examination of the State's witness and objections to evidence were overruled or were found to be irrelevant and his own testimony dealt only with an explanation of some songs and poems he wrote while at McFarland. He gave no closing argument.

Respondent's deficiencies in representing himself were all the more noticeable due to the fact the State's evidence against him was not strong. Peters, the licensed clinical social worker who was the State's sole witness, testified respondent suffered from schizophrenia and was likely to cause harm to others and fail to protect himself from harm based on scanty facts. She was not a witness to any of respondent's reported behavior but only read from notes in his file about his behavior at McFarland, which indicated he did not want to be there. Her assertion hospitalization was the least restrictive alternative was an opinion with little factual support.

Respondent was prejudiced by the trial court's failure to inquire into his knowledge of the consequences of waiving his right to counsel and representing himself. The trial court's abuse of discretion requires reversal of its order of commitment.

We reverse the judgment of involuntary commitment entered by the trial court.

Reversed.

LUND, J., concurs.

JUSTICE McCULLOUGH, specially concurring:

Section 2—1009(a) of the Law permits a plaintiff under certain circumstances to dismiss an action without prejudice. This section does not mention nor authorize an order of dismissal with leave to reinstate. An order of dismissal with leave to reinstate is a creature of case law.

I know of no prejudice to the State in dismissing petitions, upon the State's motion, in mental health cases. If the Code requirements are met, there is no limit to the filing of subsequent petitions. We should not extend case law to approve dismissals with leave to reinstate as to petitions for involuntary admission.