JOHN FOY, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—0687

Opinion filed February 13, 1990.

Anne M. Burke and Adrienne M. Geary, both of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, John Foy, appeals from an order granting summary judgment in favor of defendants, the City of Chicago, John Halpin in his capacity as commissioner of the Department of Streets and Sanitation, and Jesse Hoskins in his capacity as commissioner of personnel (collectively referred to as the City). Plaintiff had filed an action seeking a declaratory judgment that the termination of his employment as a probationary career service business manager for the Department of Streets and Sanitation (the Department) was without legal merit and that he be restored to his probationary career service position. On appeal, plaintiff contends that: (1) the trial court erred in granting summary judgment when there were genuine issues of material fact; and (2) the trial court erred in denying plaintiff's motion for leave to file a second amended complaint and to attach depositions. For the following reasons, the judgment of the trial court is affirmed.

The record indicates that on November 15, 1983, plaintiff was appointed to the position of probationary career service business manager in the Department. Pursuant to section 1 of Rule IX of the Personnel Rules of the City of Chicago (the Personnel Rules), plaintiff's probationary period was for one year. On March 22, 1984, the deputy commissioner of the department completed a written performance evaluation of plaintiff, signed and dated by plaintiff, which indicated that plaintiff had "exceed[ed] requirements" in all evaluated areas, and included the comment, "This man is an excellent Financial officer. Handles *all* assignments in a professional manner!" Subsequently, on July 3, 1984, per written notice, the commissioner of personnel discharged plaintiff from his probationary position, effective June 29, 1984. The notice stated "poor performance" as the reason for discharge.

On August 17, 1984, plaintiff filed a complaint seeking declaratory judgment, which he amended on February 26, 1985. Plaintiff's first amended complaint set forth two counts. Count I alleged, *inter alia,* that: (1) plaintiff's discharge was without any factual basis; and (2)

plaintiff's discharge was retaliatory and that defendants had abused their discretion and had conspired to act arbitrarily and capriciously and without justification toward plaintiff. Count II alleged that: (1) because the Personnel Rules of the City of Chicago were not enacted pursuant to the City's powers as a home rule municipality, the Personnel Rules must conform to the statutory requirements concerning probationary employees which mandate that a department head notify the Civil Service Commission in writing as to the reasons for the discharge and that the Commission consent to the discharge; and (2) the Personnel Rules do not conform to the statutory requirements.

The City then moved to dismiss plaintiff's first amended complaint. Following a hearing, the trial court denied the motion. Although, on its face, the written order denied the motion as to both counts, at the hearing, the court had only addressed count I and had not referred to count II. As a result, the City moved for reconsideration as to count I and for a specific ruling as to count II. On January 2, 1986, the trial court entered an agreed order which denied the City's motion for reconsideration as to count I and granted the City's motion to dismiss count II.

Thereafter, on November 12, 1987, the City moved for summary judgment as to count I on the ground that probationary career service employees do not possess any protected property or other interest in continued employment with the City and may be terminated without cause. Following arguments on the summary judgment motion, plaintiff moved to amend the pleadings and to attach depositions. The trial court denied plaintiff leave to file his amended complaint on the ground that it alleged only insufficient conclusions of law and fact and granted summary judgment in favor of the City. Plaintiff's timely notice of appeal followed.

Initially, plaintiff contends that his termination as a probationary employee was invalid because the City failed to follow its own procedures for preparing performance evaluations of probationary employees. The parties agree that Personnel Rules IX and XIV govern the manner in which performance evaluations are to be prepared. Section 2 of Rule IX of the Personnel Rules provides:

> "The department head shall report to the Department of Personnel on the performance of the probationer, at the time and on the forms prescribed by the Commissioner of Personnel, making at least one such report prior to the completion of the probationary period."

Section 4 of Rule XIV of the Personnel Rules provides:

> "The supervisor responsible for the rating shall inform the em-

ployee of the results of a performance evaluation prior to its submission to the department head. The employee shall sign and date the performance evaluation to indicate that she or he has been informed of the rating."

■■ Contrary to plaintiff's contention, the City did not fail to follow the aforementioned Personnel Rules. It is undisputed that a written performance evaluation of plaintiff, dated March 22, 1984, was prepared by the deputy commissioner of the Department and signed and dated by plaintiff. This procedure expressly conforms to the requirements of Personnel Rules IX and XIV.

In an attempt to establish that the City had violated the Personnel Rules, plaintiff refers to an unsigned and undated "substantively blank purported evaluation form dated August 14, 1984" that was obtained through discovery. However, the record does not support plaintiff's characterization of the card as an "evaluation form." Although the fine print on the bottom of the card identifies it as a "Department of Personnel Performance Rating Card," the area reserved for ratings is blank, the word "terminated" appears in the space reserved for the employee's name, and it is signed and dated by two individuals. For filing purposes, plaintiff's name and other identifying codes are typed across the top of the card. Although the card may have been labeled "Performance Rating Card," it is clear that its use in the present case was merely to note plaintiff's terminated status for the Department's records. Thus, the fact it was not signed and dated by plaintiff is irrelevant.

Further, plaintiff's reliance on *DiFalco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One* (1988), 122 Ill. 2d 22, 521 N.E.2d 923, and *Farmer v. McClure* (1988), 172 Ill. App. 3d 246, 526 N.E.2d 486, as support for his position is misplaced. In *DiFalco*, the supreme court addressed the issue of whether pursuant to section 4—110 of the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 4—110), a probationary fire fighter is entitled to a disability pension when the fire fighter first applies for the pension a year after his discharge. We find *DiFalco* to be factually inapposite and unpersuasive as to the issues in the present case. With respect to *Farmer v. McClure*, although *Farmer* addresses the issue of the propriety of the discharge of a probationary employee, its factual distinctions render it unpersuasive. In *Farmer*, the State agency employer had failed to follow its own procedural rules for termination of probationary employees by neglecting to obtain plaintiff's signature on his performance evaluation form. The reviewing court affirmed the trial court's *mandamus* order and mandatory

injunction directing the employer to certify plaintiff, to restore his benefits and to refrain from enforcing the order of discharge on the ground, *inter alia*, that plaintiff had the right to have administrative rules followed. As discussed, in the present case, the City followed its Personnel Rules when it terminated plaintiff.

■■ ■ Next, plaintiff contends that the City violated its duty of good faith toward him by terminating him for a false reason. As a matter of law, the implied duty of good faith is inherently incongruous with an employment contract which gives the employer the right to terminate employment without cause. (*Harrison v. Sears, Roebuck & Co.* (1989), 189 Ill. App. 3d 980, 546 N.E.2d 248.) Moreover, we find plaintiff's suggestion that his excellent evaluation in March evidences that his termination in June was improper to be extremely tenuous. In March, half of plaintiff's probationary period remained within which his job performance was to be evaluated. A favorable performance for one half of a probationary period does not guarantee the same performance for the second half. Furthermore, even if his performance rating in June had remained the same, that fact would be irrelevant to the propriety of plaintiff's termination. Nothing in the Personnel Rules requires an unsatisfactory performance rating as a prerequisite to firing a probationary employee. (See *Fontano v. City of Chicago* (7th Cir. 1987), 820 F.2d 213.) In its memorandum of opinion, the trial court acknowledged this legal principal when it stated, "[W]here the rules do not require that any reason be given much less an accurate reason a discharge for a 'false reason' does not violate the Personnel Rules." In our view, Illinois law supports this conclusion.

■ Plaintiff next contends that the trial court's denial of his motion to amend the pleadings and to attach depositions filed after the hearing on the City's motion for summary judgment was a clear abuse of discretion. In support of his contention, plaintiff relies on section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c)) and on *Fryison v. McGee* (1982), 106 Ill. App. 3d 537, 436 N.E.2d 12. In our view, neither of these authorities supports plaintiff's position.

Section 2—1005(c) provides, in pertinent part:

> "The opposite party may prior to or at the time of the hearing on the motion file counteraffidavits." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).)

In the present case, not only did plaintiff wait until one week after the hearing on the summary judgment motion to request leave to amend the pleadings, he attempted to attach depositions, not counter-

affidavits, to the amended pleading. In our view, even the most liberal construction of section 2—1005(c) would not support plaintiff's attempt to amend the pleadings at that time and in that manner.

■ Plaintiff's reliance on *Fryison v. McGee* (1982), 106 Ill. App. 3d 537, 436 N.E.2d 12, is equally unpersuasive. Plaintiff cites to *Fryison* as support for the general legal principle that in determining a summary judgment motion, the court has the duty to review the entire record and to construe the evidence strictly against the moving party and liberally in favor of the nonmoving party. As a general statement of law, plaintiff's statement is correct. However, as support for his argument that the trial court abused its discretion by not allowing him to file his amended pleading, it is inapplicable. The court's obligation to review the record extends only to timely filed, well-pled pleadings. As discussed, plaintiff's amended complaint did not satisfy these prerequisites.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.