JOHN STEINBERG *et al.*, as Adm'rs of the Estate of Shannan Steinberg, Deceased, Plaintiffs-Appellants, v. WARD DUNSETH *et al.*, Defendants-Appellees.

Fourth District No. 4—95—0059

Argued August 25, 1995.—Opinion filed November 27, 1995.—Rehearing denied January 18, 1996.

STEIGMANN, J., concurring in part and dissenting in part.

Rick Verticchio (argued), of Verticchio & Verticchio, of Gillespie, for appellants.

David L. Drake (argued), of Drake, Narup & Mead, P.C., of Springfield, for appellee Peter Roodhouse.

Albert G. Webber (argued), of Kehart, Shafter, Hughes & Webber, P.C., of Decatur, for appellee Jana Petra.

Kathleen L. Pine (argued), Carolyn L. Trokey, and Matthew J. Nielsen, all of Sandberg, Phoenix & von Gontard, P.C., of St. Louis, Missouri, for appellee Passavant Area Hospital.

JUSTICE COOK delivered the opinion of the court:

The trial court struck the written report of plaintiffs' reviewing health professional (735 ILCS 5/2—622 (West 1992)), dismissed certain counts and denied leave to file others after the statute of limitations had run. Plaintiffs appeal. We reverse and remand.

Plaintiffs' second-amended complaint alleges plaintiffs' decedent, Shannan Steinberg, was involved in an automobile accident on July 11, 1991, which resulted in her admission to defendant Passavant Area Hospital (Passavant). Shannan developed a respiratory problem in her right lung, and in the early morning hours of July 18 Shannan's treating physician, Dr. James Drennan, examined her and ordered X rays. Dr. Drennan had previously made arrangements with defendant Dr. Ward Dunseth to cover for him when he was unavailable. Dr. Drennan was unavailable when the results of the X rays were received about midmorning. Dr. Dunseth accordingly began treating Shannan and on July 18 performed a rigid bronchoscopy, a visual examination of the bronchus, the tube which connects the lung to the trachea. Defendant Dr. Jana Petra provided standby anesthesiology during the bronchoscopy. Defendant Dr. Peter Roodhouse is head of the department of anesthesiology at Passavant and was present during a portion of the surgery. Shannan died July 29 after being removed from life supports.

Plaintiffs' expert, Dr. John C. McCabe, made the following comments in his written report of January 16, 1992:

"In reviewing the hospital records, I find her care to be appropriate until she was taken to the Operating Room the second time. At that time she had a totally collapsed right lung. Review of the anesthesia record when she was taken into the Operating Room reveals a pulse oximeter oxygen saturation of 60%. She had no arterial line for the evaluation of blood gasses nor did she have an endotracheal tube to control this rather unstable blood gas situa-

tion. Rather she had an intercostal nerve block over multiple ribs on the left side which was the only expanded lung. One of the known complications of an intercostal nerve block is a pneumothorax. This is particularly likely to occur in an hyperexpanded lung as was the case here. To compromise the left lung would have obviously had disastrous results in this already extremely compromised patient. It is always easier in retrospect after a problem has occurred to criticize what has been done. However, I think it is fair to say that most physicians in this situation would have intubated this patient and gained airway control prior to doing any further diagnostic or therapeutic procedures. The primary effort should have been directed at clearing the secretions in the airway to the right lung. I think pain relief was of secondary importance and clearly presented a threat to this patient. Both the anesthesiologist and the primary surgeon in this case can be faulted for a breach in acceptable therapy of this compromised patient."

## I. DISMISSAL OF COUNTS XV AND XVI (DR. ROODHOUSE) AND RELATED VICARIOUS LIABILITY COUNTS XVII AND XVIII (PASSAVANT)

Plaintiffs' original complaint, filed January 3, 1992, named Dr. Roodhouse as a defendant. The court dismissed those counts pursuant to section 2—622 of the Code of Civil Procedure (Code) (735 ILCS 5/2—622 (West 1992)) because the report of the reviewing health care professional did not mention Dr. Roodhouse. Plaintiffs were given leave to amend but instead moved for voluntary dismissal on May 26, 1992 (allowed June 26, 1992). On May 18, 1993, plaintiffs filed additional counts IX and X against Dr. Roodhouse on the theory that Dr. Roodhouse was liable, *respondeat superior*, for the acts of Dr. Petra. Dr. McCabe's report that there was reasonable and meritorious cause for filing an action against Dr. Petra was sufficient support for those counts under section 2—622 of the Code. (See *Comfort v. Wheaton Family Practice* (1992), 229 Ill. App. 3d 828, 594 N.E.2d 381.) On December 16, 1993, plaintiffs sought leave (granted February 22, 1994) to file additional counts XV and XVI against Dr. Roodhouse, based on Dr. Roodhouse's own negligence and supported by a December 10, 1993, supplemental report of Dr. McCabe. Plaintiffs explained the delay by saying that on October 15, 1993, Dr. Roodhouse's discovery deposition was taken, which revealed the existence of a doctor-patient relationship, and that Dr. Roodhouse had examined and treated Shannan.

Dr. Roodhouse's motion to strike, filed March 16, 1994, pointed out that Dr. McCabe, in his January 29, 1994, deposition, admitted

that he knew, in December 1991, that Dr. Roodhouse was involved in the case and that Dr. McCabe's opinions had not changed since 1991. The motion to strike was joined with a motion to dismiss, which alleged that the two-year statute of limitations (735 ILCS 5/13—202 (West 1992)) had run and that Dr. McCabe's report had violated section 2—622 of the Code. The trial court struck Dr. McCabe's report as inconsistent with his deposition taken January 29, 1994, and dismissed counts XV and XVI. The trial court also dismissed counts XVII and XVIII. Those counts were directed to Passavant on the theory Passavant was vicariously liable for the conduct of Dr. Roodhouse. Plaintiffs appeal.

■ Section 2—622(a)(1) of the Code (735 ILCS 5/2—622(a)(1) (West 1992)) requires that in healing art malpractice actions plaintiff's attorney file an affidavit that he has consulted with a health professional who, in a written report, "after a review of the medical record and other relevant material," has determined that there is reasonable and meritorious cause for the filing of such an action. A copy of the written report must be attached to the affidavit. The attorney's failure to file such an affidavit is grounds for dismissal. (735 ILCS 5/2—622(g) (West 1992).) Untrue statements in the affidavit, made without reasonable cause, shall subject the attorney or the plaintiff to the payment of expenses and attorney fees. (735 ILCS 5/2—622(e) (West 1992).) A reviewing health professional who prepares his report in good faith is immune from civil liability which might otherwise result. 735 ILCS 5/2—622(f) (West 1992).

■ Section 2—622 of the Code allows a court to dismiss a complaint when no affidavit is attached, although the court has discretion to allow leave to amend and attach a new affidavit. (*McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 192-94, 520 N.E.2d 293, 295-96.) Section 2—622 does not, however, provide that a defendant may secure a dismissal by showing that the written report is mistaken or inconsistent with depositions or other discovery materials. (*Thompson v. Heydemann* (1992), 231 Ill. App. 3d 578, 582-83, 596 N.E.2d 664, 668.) Section 2—622 is a pleading requirement designed to reduce frivolous lawsuits, not a substantive defense which may be employed to bar plaintiffs who fail to meet its terms. (*McCastle*, 121 Ill. 2d at 193, 520 N.E.2d at 296.) A complaint may be dismissed where the section 2—622 written report does not clearly identify the reasons for the health care professional's determination that there is a meritorious cause of action, but leave to amend should then be granted. In a medical malpractice case, plaintiff should be afforded every reasonable opportunity to establish his case. *Peterson v. Hinsdale Hospital* (1992), 233 Ill. App. 3d 327, 332, 599 N.E.2d 84, 89.

■ As in *Thompson*, the court here seems to have considered this situation similar to one where a party seeks to avoid summary judgment by filing an affidavit which conflicts with the affiant's prior testimony. That approach is mistaken. A motion for summary judgment, not a motion to strike or dismiss on the basis of a section 2—622 violation, is the proper vehicle to test whether there is any factual support for a claim. Even if the court had treated this motion as one for summary judgment, it should not have stricken Dr. McCabe's affidavit. A deponent may controvert his deposition statements so long as they do not amount to a judicial admission, a " 'deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge.' " (*Van's Material Co. v. Department of Revenue* (1989), 131 Ill. 2d 196, 212, 545 N.E.2d 695, 703 (deposition admissions are usually evidentiary admissions), quoting *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 480, 508 N.E.2d 301, 303; see also *Thompson*, 231 Ill. App. 3d at 583, 596 N.E.2d at 668.) From the beginning Dr. McCabe faulted the performance of the anesthesiologist in this case, whoever that person might have been. Dr. McCabe states that he did not originally realize the degree of Dr. Roodhouse's involvement in this surgery. That statement is not contrary to any judicial admission on the part of Dr. McCabe. We do not see it as significant on this point that Dr. McCabe could have, or should have, previously known of Dr. Roodhouse's involvement. An expert, acting in good faith, may know more at the end of discovery than at the beginning. *Lucht v. Stage 2, Inc.* (1992), 239 Ill. App. 3d 679, 692, 606 N.E.2d 750, 758-59.

■ In addition to striking Dr. McCabe's report, the trial court dismissed counts XV and XVI against Dr. Roodhouse. Unfortunately the trial court did not provide any explanation for that dismissal, and we cannot tell whether the counts were dismissed because there was no longer a section 2—622 report or because the statute of limitations had run. As discussed above, the argument there was no section 2—622 report was not a proper reason for dismissal.

If plaintiffs had commenced their action against Dr. Roodhouse on December 16, 1993, the day they sought leave to file counts XV and XVI, the two-year statute of limitations would have constituted a bar. (The injury occurred July 18, 1991.) After their voluntary dismissal, however, plaintiffs had the one-time right to refile within one year, even if the statute of limitations had expired. (735 ILCS 5/13—217 (West 1992); *Flesner v. Youngs Development Co.* (1991), 145 Ill. 2d 252, 254, 582 N.E.2d 720, 721; *cf.* Pub. Act 89—7, § 15, eff. March 9, 1995 (1995 Ill. Legis. Serv. 224, 242) (effective for cases filed on or after March 9, 1995, section 2—622 affidavit must state there has been

no voluntary dismissal).) Plaintiffs did refile against Dr. Roodhouse on May 18, 1993, alleging in counts IX and X that he was vicariously liable for the acts of Dr. Petra.

Amendments may be made at any time before final judgment, even amendments changing the cause of action or adding new causes of action. The only limitation is that those amendments be allowed "on just and reasonable terms." (735 ILCS 5/2—616(a) (West 1992).) Amendments avoid the bar of the statute of limitations, however, only if the cause of action asserted "grew out of the same transaction or occurrence" as the cause of action in the original pleading. (735 ILCS 5/2—616(b) (West 1992).) A plaintiff should not be allowed to bring a late suit just because he happens to have an action pending against the defendant for another claim. Section 2—616(b) of the Code is designed to promote fairness to the litigants over technical pleading considerations and should be liberally construed in favor of hearing plaintiff's claim. (*Sompolski v. Miller* (1992), 239 Ill. App. 3d 1087, 1090, 608 N.E.2d 54, 57.) The right to amend does not depend on whether the cause of action is substantially similar to that set out in the original pleading; the true inquiry is whether plaintiff is " 'attempting to slip in an entirely distinct claim in violation of the spirit of the limitations act.' " *Sompolski*, 239 Ill. App. 3d at 1091, 608 N.E.2d at 57, quoting *Simmons v. Hendricks* (1965), 32 Ill. 2d 489, 497, 207 N.E.2d 440, 444.

> "The shift in focus from the identity of the cause of action in the original and amended complaints under our pre-Civil Practice Act pleading to the identity of the occurrence or transaction under our practice act is bottomed on the belief that if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he can prepare to meet the plaintiff's claim, whatever theory it may be based on." (*Zeh v. Wheeler* (1986), 111 Ill. 2d 266, 279, 489 N.E.2d 1342, 1348.)

The transactional approach is also employed in the modern *res judicata* cases: assertions of different theories of relief arising out of a single group of operative facts will not avoid the bar of *res judicata*. *Torcasso v. Standard Outdoor Sales, Inc.* (1993), 157 Ill. 3d 484, 491, 626 N.E.2d 225, 228; see Restatement (Second) of Judgments § 24, at 196-98 (1982); *cf. Yette v. Casey's General Stores, Inc.* (1994), 263 Ill. App. 3d 422, 425, 635 N.E.2d 1091, 1093-94 (amendment denied which would have changed theory from failure to remove ice to one of unnatural accumulation).

Section 2—616(b) of the Code must be read in accordance with the policy underlying the statute of limitations: giving defendant an opportunity to investigate while evidence is still available. A defen-

dant will not be prejudiced so long as his attention has been directed to the facts which form the basis of the claim lodged against him within the prescribed time. (*Keller v. Boatman's Bank* (1989), 186 Ill. App. 3d 448, 454-55, 542 N.E.2d 1261, 1265.) It is informative to consider cases where amendments change the location of an accident. The correct location of an accident is important, and an amendment which substantially changed the location accordingly changed the "occurrence" for purposes of section 2—616(b) of the Code. (*Zeh*, 111 Ill. 2d at 278, 489 N.E.2d at 1347 ("totally different conduct by different persons at a different time and at a different place" (*Zeh*, 111 Ill. 2d at 275, 489 N.E.2d at 1346)).) Nevertheless, where the defendants had notice, outside the pleadings, of the correct location before the expiration of the limitations period, there was no prejudice and the amendment related back for purposes of the statute of limitations. *Wolf v. Meister-Neiberg, Inc.* (1991), 143 Ill. 2d 44, 47, 570 N.E.2d 327, 329.

In *Weidner v. Carle Foundation Hospital* (1987), 159 Ill. App. 3d 710, 512 N.E.2d 824, the hospital was originally sued on the theory it was liable, *respondeat superior*, for the doctor's actions. The amended complaint, following the expiration of the statute of limitations, alleged the hospital itself was liable for not knowing its doctors' qualifications and reviewing their performance. In affirming the dismissal of the amended complaint, we held that the hospital was not placed on notice of the subsequent claim. (*Weidner*, 159 Ill. App. 3d at 713, 512 N.E.2d at 826.) A similar approach was taken in *Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 27-28, 475 N.E.2d 260, 262, where the patient was continuously treated from June 1974 to August 15, 1978. The original complaint addressed specific conduct on December 19, 1977. The amended complaint addressed conduct on June 4, 1974, and during the remainder of the period of treatment. The amendment was not allowed. *Chestnut*, 131 Ill. App. 3d at 31, 475 N.E.2d at 265.

It is difficult to see how Dr. Roodhouse has been prejudiced by the amendment here. Dr. Roodhouse has been on notice of the claim against him ever since the original counts were filed against him. The more recent counts against him were vicarious liability counts, but plaintiffs' complaints about Dr. Petra, on whose conduct the vicarious liability was based, were substantially similar to the individual complaints about Dr. Roodhouse. Dr. Roodhouse argues it is illogical to allow the counts against him to stand when similar counts against Dr. Petra were dismissed on summary judgment. That summary judgment is not before us, however, and we must review this case as we would any other granting a motion to dismiss. Dr. Rood-

house may eventually choose to file his own motion for summary judgment.

Dr. Roodhouse argues that a new theory has been asserted against him, but the fact there is a change in theory is not significant. *Weber v. Cueto* (1993), 253 Ill. App. 3d 509, 516, 624 N.E.2d 442, 448; *cf. Kennedy v. King* (1993), 252 Ill. App. 3d 52, 56, 623 N.E.2d 955, 958 (original action for automobile owner's own conduct; subsequent action for agency or negligent entrustment).

Dr. Roodhouse argues that even if the amendment involves the same transaction or occurrence for purposes of section 2—616(b) of the Code, the court has discretion not to allow the amendment under section 2—616(a) of the Code, which requires that amendments be made "on just and reasonable terms." (735 ILCS 5/2—616(a) (West 1992).) The difficulty with that argument is that the trial court *did* allow the filing of the amended complaint, over the vigorous objection of Dr. Roodhouse. Dr. Roodhouse's written objection to that amendment is almost identical to his later motion to dismiss. In any event, although a party has no absolute right to amend his pleadings, section 2—616(a) is to be liberally applied to permit resolution of cases on their merits. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 556, 437 N.E.2d 872, 881.

The trial court's decision to dismiss counts XV and XVI was an abuse of discretion. The same is true of the dismissal of the vicarious liability counts, counts XVII and XVIII.

## II. DISMISSAL OF COUNTS XXV AND XXVI (DR. PETRA); DENIAL OF LEAVE TO FILE RELATED VICARIOUS LIABILITY COUNTS XXVII AND XXVIII (PASSAVANT), XXIX AND XXX (DR. ROODHOUSE).

■ Counts III and IV of the second-amended complaint were directed to Dr. Petra. On March 17, 1994, Dr. Petra filed a motion for summary judgment as to those counts, supported by a January 29, 1994, discovery deposition of Dr. McCabe, wherein he stated that he did not believe that any act or omission of Dr. Petra was the proximate cause of Shannan's injuries. Dr. McCabe later issued a "supplemental report," May 24, 1994, stating that if Dr. Petra failed to be present during surgery, her actions constituted a breach of the standard of care. Robert Otkin, a nurse anesthetist, in a deposition dated April 7, 1994, had stated that Dr. Petra had not been continuously present during the surgery. (According to Dr. Petra, plaintiffs knew all that since December 2, 1992, when plaintiffs took the deposition of Dr. Dunseth. Compare Dr. Petra's motion opposing leave to amend, filed June 13, 1994: "A reasonable inference from Dr. Duns-

eth's testimony is that Dr. Petra was present in the operating room during the time discussed by Robert Otkin.") On May 31, 1994, plaintiffs sought leave to file counts XXV and XXVI against Dr. Petra, alleging that she had not been continuously present during the surgery. The trial court granted summary judgment on counts III and IV on June 29, 1994, but in its order gave plaintiffs leave to file counts XXV and XXVI.

Dr. Petra then filed a motion to dismiss counts XXV and XXVI in which she again argued that such late filing would violate section 2—616 of the Code, that the counts were barred by the two-year statute of limitations, and that Dr. McCabe's attached report violated section 2—622 of the Code in that it was "not based on the facts contained within his medical report." Dr. Petra at the same time filed a new motion for summary judgment. On December 19, 1994, the trial court dismissed counts XXV and XXVI. The trial court did not give any reasons for its decision, but stated it "did not consider the alternative motion for summary judgment and did not make any factual findings in making this decision." The parties agree, however, that the trial court viewed its earlier grant of summary judgment as controlling, and that was the reason for the dismissal of counts XXV and XXVI. The trial court also refused leave to file counts XXVII and XXVIII against Passavant alleging Passavant was vicariously liable for the acts of Dr. Petra, and counts XXIX and XXX against Dr. Roodhouse alleging he was vicariously liable for the acts of Dr. Petra.

It is illogical for a court to grant summary judgment on a count, and then allow plaintiffs to replead that same count. Nevertheless, section 2—1005(g) of the Code (735 ILCS 5/2—1005(g) (West 1992)) provides that "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." (See also *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 416-17, 615 N.E.2d 736, 742-43 (appellate court allowed amendment after reversing entry of summary judgment).) Subsection 2—1005(g) of the Code was added in 1985, at the time the section was amended to allow partial summary judgments. We do not read section 2—1005(g) to require the court to allow the useless act of repleading claims on which it has already decided that summary judgment is required. Amendment may be appropriate, however, where summary judgment is entered on the theory pleaded, but the depositions and affidavits indicate that another theory is viable. (A motion for summary judgment must be decided on the basis of the record as it exists at the time the motion is heard. *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271-72, 586 N.E.2d 1211, 1215.)

The trial court logically would not have granted leave to amend

if it believed the amended counts were identical to those on which it had granted summary judgment. Dr. McCabe's supplemental written report indicated that if Dr. Petra were not present, there was a breach of the standard of care. Again, we do not see that Dr. McCabe's report was contrary to any prior judicial admission on his part. His testimony raises a question of fact as to the liability of Dr. Petra, and if it had been considered on the motion for summary judgment, the motion would apparently have been denied. If Dr. Petra's absence was an ultimate fact, as opposed to evidence, then it was necessary to file an amended pleading, and the trial court properly granted leave to file amended counts XXV and XXVI.

Dr. Petra argues in her brief that the question is not whether counts XXV and XXVI are legally sufficient. "The question is whether, as a part of yet another amendment to a second[-]amended complaint, following summary judgment, they are sufficient." We disagree that our review of the dismissal of counts XXV and XXVI is affected by the grant of summary judgment, a matter which is not before us. A similar situation existed in *Loyola Academy*, where the supreme court considered that it was unable to review the interlocutory grant of summary judgment, but was limited to ruling on the denial of leave to amend. Noting that "the procedures followed by all parties to this action are far from standard" (*Loyola Academy*, 146 Ill. 2d at 271, 586 N.E.2d at 1214), the court held the amendment should be allowed where it would cure the defective pleading.

The trial court did not explain why it dismissed counts XXV and XXVI on December 19, 1994. Dr. Petra argues the trial court had discretion under section 2—616(a) of the Code not to allow the complaint to be amended by the filing of counts XXV and XXVI. Again, however, the court exercised its discretion *to allow* the amendment, over the strenuous objection of Dr. Petra. Because of the policy that amendments should be liberally allowed in order that cases are decided on their merits, it would appear the court properly allowed the amendment.

Dr. Petra argues that these amendments, which occurred after the two-year statute of limitations had run, do not relate back under section 2—616(b) of the Code because they do not involve the same transaction or occurrence, and because the original complaint was not sufficient to place Dr. Petra on notice of the present claim. The "transaction or occurrence" in this case is the surgery which took place on one day, July 18, 1991. Dr. Petra was on notice from the beginning that her conduct during that surgery might be the basis of a claim.

Finally, Dr. Petra argues that Dr. McCabe's report was not suf-

ficient under section 2—622 of the Code because it relied on the deposition of the nurse, Robert Otkin, and not on a "review of the medical record and other relevant material" as required by section 2—622(a)(1) (735 ILCS 5/2—622(a)(1) (West 1992)). Dr. Petra's argument seems to be that a report which finds no support in the medical record but relies solely on "other relevant material" cannot be sufficient under section 2—622 of the Code. That argument is frivolous. The reviewing health professional is required to review the medical record, but the fact he finds nothing there does not necessarily prevent the filing of an action. In a worst case situation, medical records personnel might be involved in a cover-up and remove all incriminating material from the file. Surely that fact would not prevent the filing of the action. In a less aggravated situation, all involved may be unaware of a particular condition, procedure, or method of treatment, and accordingly not mention it in the medical record. Nevertheless, information outside the record may establish a breach of the standard of care in the failure to discover the condition or utilize the procedure or method of treatment.

Dr. Petra argues that Dr. McCabe's section 2—622 report is self-contradictory. We repeat, if there is no factual support for these counts, that should be established on a motion for summary judgment, not by a technical attack on the preliminary report attached to the complaint. The section 2—622 report is a ticket which plaintiff must possess in order to file his complaint. If plaintiff has the ticket, if there has been minimal compliance (*Neuman v. Burstein* (1992), 230 Ill. App. 3d 33, 39-40, 595 N.E.2d 659, 664) with section 2—622 of the Code, the case should move on to summary judgment or trial. See *DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 65, 588 N.E.2d 1139, 1142 (purpose of section 2—622 to eliminate frivolous suits "at an early stage"); see also *Yuretich v. Sole* (1994), 259 Ill. App. 3d 311, 314, 631 N.E.2d 767, 770.

The trial court's decision to dismiss counts XXV and XXVI was an abuse of discretion. The denial of leave to file counts XXVII, XXVIII, XXIX and XXX was an abuse of discretion.

### III. DENIAL OF LEAVE TO OBTAIN ADDITIONAL EXPERT WITNESS.

■ The trial court entered a scheduling order on July 26, 1993, directing among other things that plaintiffs disclose their experts by November 1, 1993, that defendants disclose their experts by June 1, 1994, and that jury trial be set for August 23, 1994. The scheduling order was vacated on December 2, 1993, with a new order to be discussed on January 20, 1994. Apparently none was ever entered.

On November 1, 1993, plaintiffs asked for an additional 21 days in which to obtain an additional expert witness. According to their motion, plaintiffs deemed an additional witness was necessary based on their intention to file additional counts against Dr. Roodhouse individually in his capacity as an anesthesiologist and based on their intention to ask the court to reconsider its order in favor of Passavant on *respondeat superior* liability. On April 12, 1994, the court denied that motion with regard to Dr. Dunseth, Dr. Petra, and Passavant, but granted the motion with regard to Dr. Roodhouse. Plaintiffs appeal that order.

Dr. Petra argues we may not consider this issue because discovery orders standing alone are not appealable. In this case, however, the discovery order does not stand alone, but is a part of a valid appeal. Discovery orders are reviewable on appeal from the final order.

Pursuant to Supreme Court Rule 219(c), the trial court has discretion to determine the appropriate sanction for a Supreme Court Rule 220 violation (134 Ill. 2d Rules 219(c), 220), although the purpose of sanctions is to advance the discovery process rather than to punish the offending party. (*Farley Metals, Inc. v. Barber Colman Co.* (1994), 269 Ill. App. 3d 104, 109, 645 N.E.2d 964, 967.) In *Smock v. Hale* (1990), 197 Ill. App. 3d 732, 740-41, 555 N.E.2d 74, 79, this court reversed the trial court's refusal to allow plaintiff's late designation of an additional witness, after the court (erroneously) disqualified plaintiff's existing expert. We saw *Smock* as similar to *Cometo v. Foster McGaw Hospital* (1988), 167 Ill. App. 3d 1023, 522 N.E.2d 117, where plaintiff's single expert witness refused to testify at trial. The court reversed a summary judgment in *Cometo*, and held that the circumstances warranted the reopening of discovery. No such circumstances were present in *Prather v. McGrady* (1994), 261 Ill. App. 3d 880, 887, 634 N.E.2d 299, 304, and we there affirmed the refusal to allow an additional witness to be named.

In the present case no reason appeared why plaintiffs could not use Dr. McCabe, the witness they originally designated. Dr. Petra argues in her brief the only reason to extend the scheduling order is to allow "plaintiffs [to] shop this case to find someone who will disagree with Dr. McCabe, their original expert, and criticize Dr. Petra." However, there was no scheduling order in existence on June 29, 1994, when the trial court denied plaintiffs leave to designate an additional witness. As we are remanding this case, some delay will necessarily occur anyway, and accordingly we direct the trial court to allow plaintiff a reasonable amount of time to designate an additional expert witness. In a medical malpractice case, plaintiff should be afforded every reasonable opportunity to establish his case. *Peterson*, 233 Ill. App. 3d at 332, 599 N.E.2d at 88.

Reversed and remanded.

KNECHT, P.J., concurs.

JUSTICE STEIGMANN, concurring in part and dissenting in part:

Although I fully agree with part I of the majority opinion, which analyzes section 2—622 of the Code, I dissent from that portion of the opinion which reverses the dismissal of the counts against Dr. Petra. Instead, I agree with Dr. Petra's argument that the statute of limitations bars plaintiffs' new counts against Dr. Petra because, under section 2—616(b) of the Code, they do not relate back to the original counts against Dr. Petra.

The alleged medical malpractice occurred in July 1991, when defendants treated plaintiffs' decedent following an automobile accident. In January 1992, plaintiffs initially sued Dr. Petra and the other defendants. Although the subsequent procedural history of this case is somewhat strange, all parties agree that the counts against Dr. Petra now on appeal were filed in May 1994. Thus, the new counts violate the two-year statute of limitations unless those counts relate back to the initial counts plaintiffs filed against Dr. Petra. In December 1994, the trial court dismissed those new counts, and the majority reverses on the ground that they do relate back.

The initial counts against Dr. Petra allege that she was negligent because she was present in the operating room, watched Dr. Dunseth treat plaintiffs' decedent in a negligent manner, and failed to intervene. The counts on appeal allege that Dr. Petra left the operating room at a time of critical need for plaintiffs' decedent. The majority concludes that the later counts relate back to the earlier ones because the "transaction or occurrence" in this case, under section 2—616(b) of the Code, is the surgery on plaintiffs' decedent which occurred in July 1991. Thus, according to the majority, "Dr. Petra was on notice from the beginning that her conduct during the surgery might be the basis of a claim." (276 Ill. App. 3d at 1048.) I disagree with this analysis and view it as both an undue broadening of section 2—616(b) of the Code and inconsistent with previous decisions of this court.

A claim of patient abandonment has nothing to do with a claim that a surgeon negligently performed a surgical procedure. A physician confronted with a claim that she negligently performed a surgical procedure would have no reason to be on notice that an issue might arise regarding whether she was even present in the operating room at all necessary times. Thus, the majority view conflicts with

decisions of this court in *Weidner* and *Chestnut*, both of which essentially held that the amended pleading would relate back to the original complaint *if* the original complaint provided the defendant with all of the information necessary to prepare a defense to claims later asserted. As Dr. Petra argues, for $2^1/2$ years, from the filing of the initial complaint in January 1992 until the filing of the new counts in May 1994, she prepared her defense based upon a claim of negligent *treatment* of plaintiffs' decedent. All of that preparation is for naught because the majority allows plaintiffs to now proceed on the entirely new theory of patient *abandonment*. As a result, almost four years after the events complained of, the majority requires Dr. Petra, as she puts it, "to start anew and examine all witnesses present on July 18, 1991, not as to what she did, but whether or not she abandoned the plaintiffs' decedent."

I agree with Dr. Petra and note that here, as in *Weidner*, the same physician, patient, date, and medical procedure are involved. Because in both instances only the plaintiffs' theory has changed, I believe no principled distinction exists between this case and *Weidner*.

I further find this case indistinguishable from *Yette*, another decision of this court, in which plaintiff fell on ice in defendant's parking lot. When plaintiff sought to change her theory from a claim that defendant failed to salt an ice accumulation to a claim of unnatural accumulation, the trial court granted defendant's motion to dismiss on the ground that the statute of limitations had run and the new counts did not relate back to the initial one. In *Yette*, as in the present case, the only change was the theory underlying plaintiff's claim. Nonetheless, this court affirmed the dismissal, holding that the change in plaintiff's theory was such that defendant was not put on notice in the initial complaint that it might have to concern itself with how water ran off its building and whether an unnatural accumulation of ice occurred. We explained in *Yette* that the "amended pleadings were based on conduct *** different from [that] alleged in the original complaint and for which defendant had no notice." *Yette*, 263 Ill. App. 3d at 426, 635 N.E.2d at 1094.

In my judgment, the theories of recovery presented by the plaintiff in *Yette* in her initial and amended complaints are closer to each other than the theories of recovery asserted here: negligent treatment on the one hand and patient abandonment on the other.

As a last matter, I disagree with the last sentence of the majority opinion, which states the following: "In a medical malpractice case, plaintiff should be afforded every reasonable opportunity to establish his case." (276 Ill. App. 3d at 1050.) I do not know what this sentence

is intended to mean, but I envision its ambiguity causing much mischief. It seems to imply that a separate set of standards exists under the Code for evaluating the sufficiency of medical malpractice claims, as well as for governing how the trial courts should administer them. I disagree with both implications and find nothing in the Code to suggest that a medical malpractice plaintiff should be treated any differently—better or worse—than the plaintiff in any other civil case.

For the reasons stated, this court should affirm the dismissal of the amended counts against Dr. Petra and reverse the trial court's dismissal of the other counts before us.