MARCUS LEWIS, Plaintiff-Appellant, v. AMERICAN AIRLINES, INC., Defendant-Appellee.

First District (5th Division)   No. 1—95—4214

Opinion filed March 27, 1997.—Rehearing denied April 21, 1997.

Charles E. Antonietti, of Calumet City, for appellant.

Jones, Ware & Grenard, of Chicago (Cathy Ann Pilkington, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Marcus Lewis appeals from the circuit court's orders granting summary judgment to defendant American Airlines, Inc. (American), and denying his motions for leave to: (1) conduct additional discovery prior to summary judgment; (2) file a fourth amended complaint; and (3) file a jury demand. For the reasons that

follow, we affirm. The factual context of this dispute appears in the pleadings or discovery documents.

Plaintiff, hired by American as a ramp service clerk in 1984, soon noticed that the doors on American's tractors did not protect drivers from the elements. Plaintiff told his group supervisor, Dick Walters, about his idea to invent a plastic or canvas door that "fanned" like a shower curtain to cover the aperture in bad weather. Walters told plaintiff to submit his idea to American through its Employee Suggestion Program, an arrangement with which plaintiff allegedly had been familiar since his first week of work. Plaintiff thereafter did so on a suggestion form which stated that "[a]ccepted suggestions become the exclusive property of American" and American's decisions regarding "the amount of awards are final." Prior to his initial meeting with Walters, he practiced his idea on a shower curtain at home, attaching weights to the bottom of the curtain to see how it would retract and extend. He also checked with various manufacturers to discover the most suitable material for his idea. Doors, fabricated by American, occasionally appeared on American's tractors, beginning in 1985.

■ American's Employee Suggestion Program (Program) was created by its regulations, two of which are relevant here.[1] Regulation 145—14 defined the Program's objectives and structure. The Program was created to help American "simplify and improve procedures, *** eliminate unnecessary work, *** increase employee productivity, and *** reduce operating expense." The Program identified a potential cash award, "equal to 10% of the estimated first year's savings, following adoption, realized from the suggestion (after installation costs have been deducted)." The maximum potential award was limited to $10,000.

■ Regulation 145—15 established "when, and how releases of, and awards for, copyrightable material and patentable inventions may be granted to employees." Regulation 145—15 states, in part:

"Since all material and inventions *** automatically become the property of [American], *there is no obligation upon [American] to award any additional compensation to employees whose material or inventions are used.* However, additional compensation *may be awarded,* or the property rights of [American] *may be released* to the employee, at the *complete discretion* of [American], in accordance with the following procedures. Since [American] is not a

---

[1]American's Employee Suggestion Program was terminated in 1986 and replaced by IdeAAs in Action. IdeAAs in Action grants "award credits," not cash awards, for employee's ideas which are implemented.

manufacturer, releases will *ordinarily* be freely granted to employees." (Emphasis added.)

The foregoing was consistent with American's employment application plaintiff had filled out upon starting work with American, which stated:

"All right, title and interest, including, without limitation, all copyrights and patents, in and to any material produced or inventions developed by me which affect or relate to the company's business or affect or relate to the air transportation industry *shall vest in the company and I shall have no personal right, title or interest whatsoever therein.*" (Emphasis added.)

A photograph of plaintiff standing next to a tractor with the flexible door he suggested appeared in American's internal newspaper, "Flagship News," in November of 1985. Shortly thereafter, plaintiff spoke to Walters about securing patent rights to his idea. Plaintiff then met with a union steward and Walters and reviewed Regulation 145—15. Plaintiff asked Walters to ascertain whether American would release its rights to his idea. American refused plaintiff a release, but subsequently calculated an award for him at $866.32. After plaintiff complained about the size of his award, American agreed to extend the period during which cost savings would be calculated.

Nevertheless, on September 11, 1990, plaintiff filed a complaint, seeking an accounting.[2] American successfully moved to dismiss plaintiff's complaint because it already had furnished plaintiff with a sufficient accounting. Plaintiff was granted leave to file an amended complaint, which was subsequently dismissed because it was "confusing and impractical to respond." Plaintiff thereafter filed a second amended complaint for breach of contract, claiming that he and American "entered into an oral contract based on" American's Program. Plaintiff also alleged that letters from American's vice-president and assistant vice-president were written contracts evidencing American's agreement to pay plaintiff 10% of all cost savings. American's motion to dismiss plaintiff's second amended complaint was denied in part, but the court granted American's motion to dismiss plaintiff's claim for punitive damages. Plaintiff then filed a third amended complaint, averring that he and American entered into an oral contract, based upon American's Program, under which American agreed to release to plaintiff its property rights to the tractor door so that plaintiff could patent his suggestion. American moved to dismiss the third amended complaint, and the circuit court granted

---

[2]Although plaintiff was initially represented by counsel, his lawyer was permitted to withdraw in December of 1992 and, thereafter, plaintiff has appeared *pro se* throughout all circuit court proceedings.

plaintiff leave to withdraw the third amended complaint and reinstate the second amended complaint.

American then moved for summary judgment on plaintiff's second amended complaint, maintaining that Regulation 145—15 did not create an enforceable contract under *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 505 N.E.2d 314 (1987) (*Duldulao*), and assuming *arguendo* a binding contract was created, Regulation 145—15 vested American with sole discretion to determine whether or not to release its property rights in the tractor door. On November 6, 1995, the circuit court granted American's motion for summary judgment, finding that *Duldulao*'s prerequisites had not been met. The court advised plaintiff that it "would consider a motion for leave to file an amended complaint." Plaintiff, however, did not wish to amend his complaint, but to appeal.

Late on December 4, 1995, plaintiff filed an emergency motion for leave to submit a fourth amended complaint, seeking to add counts for violation of the Illinois Employee Patent Act (765 ILCS 1060/1 *et seq.* (West 1994)), *quantum meruit*, misappropriation of a commercial advantage, intentional interference with prospective business advantage, and conversion. A hearing on plaintiff's motion was held at 9:30 a.m. the next day. American contended it did not have time to research plaintiff's proposed causes of action as well as procedural issues presented by plaintiff's proposed amended complaint. Plaintiff rejected the court's invitation to submit a post-judgment motion and file it *instanter*, which would have extended the period for filing a notice of appeal and permitted the court to continue the hearing on plaintiff's emergency motion; instead, plaintiff demanded a ruling on his emergency motion. The court denied plaintiff's emergency motion, finding that it was submitted "so late that the court and defendant's counsel are without an opportunity to review the law" and plaintiff refused an extension of time "and an opportunity to file a motion seeking modification of the judgment." Plaintiff timely filed his notice of appeal the next day.

I

Plaintiff initially contends the circuit court erroneously denied his motion for leave to file a fourth amended complaint because his proposed amendments simply added new legal claims.

■ Section 2—1005(g) of the Code of Civil Procedure permits a party to amend his pleading "[b]efore or after the entry of a summary judgment *** upon just and reasonable terms." 735 ILCS 5/2—1005(g) (West 1994). The circuit court has broad discretion in deciding motions to amend pleadings. *Loyola Academy v. S&S Roof*

*Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211 (1992). To determine whether a pleading amendment should be permitted after the entry of summary judgment, the appropriate standards to be met are whether the proposed amendment would cure the defective pleading, whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, the timeliness of the proposed amendment, and whether plaintiff has had previous opportunities to amend the pleadings. *Loyola Academy*, 146 Ill. 2d at 273, citing *Kupianen v. Graham*, 107 Ill. App. 3d 373, 377, 437 N.E.2d 774 (1982); see *Evans v. United Bank of Illinois, N.A.*, 226 Ill. App. 3d 526, 589 N.E.2d 933 (1992).

■ Plaintiff contends the proposed fourth amended complaint would cure his prior defective pleadings because he was entitled to relief based upon the five new counts. Plaintiff's brief does not address each new count, however, and most of his argument is unsupported by citation to authority. See 155 Ill. 2d R. 341(e)(7). Further, plaintiff did not argue or explain in the circuit court how his proposed amended complaint would cure the apparent deficiencies in previous pleadings, refused to file a post-judgment motion and demanded judgment on his emergency motion. Arguments not raised in the circuit court are waived on appeal. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508, 524 N.E.2d 561 (1988). Accordingly, plaintiff has waived this contention.

■ Waiver aside, plaintiff cannot show the circuit court abused its discretion because his emergency motion was untimely. Plaintiff has cited no case law to support his assertion, but relies solely upon section 2—1005(g), which permits amendment of pleadings "after" summary judgment. 735 ILCS 5/2—1005(g) (West 1994). Timeliness, however, is determined in accordance with the procedural history of each case and not merely by the fact that a motion is filed *after* summary judgment. See *Loyola Academy*, 146 Ill. 2d at 275; *Mozer v. Kerth*, 224 Ill. App. 3d 525, 586 N.E.2d 759 (1992); *Wingate v. Camelot Swim Club, Inc.*, 193 Ill. App. 3d 963, 550 N.E.2d 665 (1990); see also *Foy v. City of Chicago*, 194 Ill. App. 3d 611, 551 N.E.2d 310 (1990).

On September 11, 1990, plaintiff filed his initial complaint, based upon activities occurring in 1984 and 1985. Over 10 years after first submitting his suggestion to American and six years after the filing of his original complaint, plaintiff attempted to amend his complaint for the fourth time. Clearly, plaintiff ignored the ample time and opportunities he had to amend his complaint. When plaintiff moved to amend his complaint, moreover, the proceedings in the circuit court were well beyond the pleading and discovery stages. Indeed, trial had been set for the next month. See *Mozer v. Kerth*, 224 Ill. App. 3d 525, 586 N.E.2d 759 (1992).

Plaintiff's delay continued even after the circuit court's grant of summary judgment for American because he waited until the time for filing a notice of appeal almost had expired and then filed an "emergency motion," seeking to add five new counts to his complaint, although he had been conducting discovery since 1990. See *Wingate v. Camelot Swim Club, Inc.*, 193 Ill. App. 3d 963, 550 N.E.2d 665 (1990); *Foy v. City of Chicago*, 194 Ill. App. 3d 611, 551 N.E.2d 310 (1990). Hearing was set for the next morning, thereby preventing American's counsel from preparing effectively to respond to the motion. At the hearing, plaintiff rejected the court's offer to file a post-judgment motion so that his emergency motion could be fully briefed and considered. See *J.D. Marshall International, Inc. v. First National Bank*, 272 Ill. App. 3d 883, 888, 651 N.E.2d 518 (1995). Instead, plaintiff demanded an immediate ruling on his emergency motion. These facts clearly demonstrate the untimeliness of plaintiff's emergency motion for leave to file a fourth amended complaint.

In his reply brief, plaintiff cites four cases holding that circuit courts erred in refusing to permit amendments to the pleadings. *Droen v. Wechsler*, 271 Ill. App. 3d 332, 648 N.E.2d 981 (1995); *State Farm Fire & Casualty Co. v. M. Walter Roofing Co.*, 271 Ill. App. 3d 42, 648 N.E.2d 254 (1995); *Jeffrey M. Goldberg & Associates v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 637 N.E.2d 1103 (1994); *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038, 658 N.E.2d 1239 (1995). None of those cases, however, involved a motion for leave to amend after summary judgment nor any circumstances remotely similar to the length of delay and numerous opportunities to amend foregone by plaintiff in the present case.[3] The circuit court, then, did not abuse its discretion

---

[3]Although perfunctorily raised in his principal brief, at oral argument, plaintiff's counsel placed great emphasis on the Employee Patent Act (Act). Assuming, *arguendo*, plaintiff had been allowed to amend his complaint, he would not have been able to state a cause of action under the Act, which provides, in part:

"A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer." 765 ILCS 1060/2(1) (West 1994).

in denying plaintiff's motion for leave to file a fourth amended complaint.

## II

Plaintiff next asserts American was not entitled to summary judgment because its refusal to release plaintiff's patent rights was a breach of contract, relying upon Regulations 145—14 and 145—15.

■ This court generally reviews summary judgment orders *de novo*. *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241, 668 N.E.2d 59 (1996). A motion for summary judgment will be granted only when the pleadings, depositions, admissions, and affidavits on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1994).

■ A company's policy statement creates enforceable contract rights if three traditional requirements of contract formation are present, as prescribed by *Duldulao*, 115 Ill. 2d at 490:

"First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed."

■ Regulation 145—15 is consistent with plaintiff's employment

---

By its terms, the Act does not apply to inventions relating to the employer's business. Plaintiff maintains a narrow construction of section 2(1) is appropriate, but the legislative history to the Act reveals that "employee inventions are not protected by the Act if they *indirectly, as well as directly*, relate to the employer's business." (Emphasis added.) 83d Ill. Gen. Assem., Final Legislative Synopsis and Digest, at 1176; see 83d Ill. Gen. Assem., House Proceedings, May 20, 1983, at 129 (statements of Representative Brummer). Under this broad definition, plaintiff's idea related to American's business and, therefore, the Act does not aid him. Moreover, plaintiff did not develop his idea entirely on his own time and it is questionable whether his idea would qualify as an "invention" under the Act. 765 ILCS 1060/2(1) (West 1994). American also correctly notes that the only employment application contained in the record is dated 1983. The Act requires notice for employment applications entered into after January 1, 1984. 765 ILCS 1060/2(3) (West 1994).

application and states that "any material produced or inventions developed by an employee which affect or relate to [American's] business or *** the air transportation industry are vested in [American]." Under Regulation 145—15, American has no obligation "to award any additional compensation to employees whose material or inventions are used"; rather, American may award additional compensation or release its rights in its "complete discretion." Regulation 145—15 also states that since American is not a manufacturer, "releases will ordinarily be freely granted to employees."

Plaintiff contends a reasonable person would believe that American would "freely" exercise its discretion to release its patent rights. *Duldulao*'s first requirement, however, is whether the language of the regulation would lead an employee reasonably to believe that an offer has been made. 115 Ill. 2d at 490. Regulation 145—15 is not an offer, but is consistent with the employment application in defining American's rights to employees' inventions. Indeed, Regulation 145—15 expressly provides that "there is no obligation upon" American to award any additional compensation. Regulation 145—15 also provides "when, and how releases of, and awards for, copyrightable material and patentable inventions *may* be granted to employees." (Emphasis added.) Although American may furnish an award or grant a release, those decisions are within American's "complete discretion" and, therefore, no person reasonably could believe that this language created an offer.

■ Plaintiff also asserts American had to exercise its discretion in good faith; however, there is no evidence to show that American did not do so. Plaintiff's argument mistakenly assumes that American was obliged to grant a release because Regulation 145—15 states that "releases will ordinarily be freely granted to employees." The language of Regulation 145—15 is not mandatory, but is qualified by the term "ordinarily," as well as the discretionary language in the preceding sentence. The lack of mandatory language is fatal to plaintiff's claim. Plaintiff therefore has failed to vault the first *Duldulao* hurdle. See *Evans v. Gurnee Inns, Inc.*, 268 Ill. App. 3d 1098, 1103-04, 645 N.E.2d 556 (1994).

■ Plaintiff next asserts that Regulation 145—14 creates an enforceable contract under *Duldulao* and the circuit court erred in granting summary judgment.

Regulation 145—14 sets forth the objectives, administration and basic policies of American's Program. Regulation 145—14 provides that "[d]ecisions of [American] in determining eligibility, acceptance, or non-adoption, and the amount of awards are final." Additionally, American "has the exclusive authority to make the policy and

determine the rules regarding the operation of the Suggestion Program and reserves the right to change or discontinue this program at any time without notice."

Plaintiff asserts that Regulation 145—14 creates an offer because it sets forth a specific procedure for submitting suggestions and granting awards. Plaintiff also claims that Regulation 145—14 is definitive enough to lead a person reasonably to believe that an offer to pay for his idea is made if he submits an eligible idea pursuant to American's Program. Neither Regulation 145—14 nor Regulation 145—15, however, contains the language of an offer or promise. Regulation 145—14, consistent with Regulation 145—15 and the employment application, grants American complete discretion in determining eligibility as well as the amount of an award. Regulation 145—14 does not contain "a promise clear enough that an employee would reasonably believe that an offer has been made." *Duldulao*, 115 Ill. 2d at 490. Summary judgment properly was granted to American.

In light of our affirmance of the circuit court's denial of plaintiff's motion for leave to file a fourth amended complaint, as well as its grant of American's motion for summary judgment, plaintiff's remaining contentions are moot.

For the foregoing reasons, the orders of the circuit court are affirmed.

Affirmed.

HOURIHANE and SOUTH, JJ., concur.